Gene J. WILKETT, Plaintiff,

v.

C. W. DAVIS, Paul R. Dean, and Harry Huge, Individually and as Trustees of the United Mine Workers of America Welfare and Retirement Fund and United Mine Workers of America Welfare and Retirement Fund, Defendants.

No. 76–295–C.

United States District Court, E. D. Oklahoma.

Dec. 30, 1977.

Thomas B. Webb, McAlester, Okl., for plaintiff.

Maynard I. Ungerman, Tulsa, Okl., Henry S. Ruth, Jr., Norman P. Goldberg and Timothy J. Parsons, UMWA, Health & Retirement Funds, Washington, D. C., for defendants.

## MEMORANDUM OPINION

MORRIS, Chief Judge.

On November 2, 1976, plaintiff filed this action seeking judicial review of the denial of his claim for pension benefits from the

United Mine Workers of America Welfare and Retirement Fund of 1950 (The Fund). Plaintiff contends that he has met the pension eligibility requirements and that the defendant Trustees arbitrarily and capriciously denied him pension benefits. Defendants deny that plaintiff is entitled to benefits from the Fund. Trial was had to the court sitting without a jury on October 26, 1977.

The principal issue presented by this case is whether defendant Trustees acted arbitrarily and capriciously or contrary to substantial evidence in denying plaintiff pension eligibility credit for the years he claims he was employed in the bituminous coal industry between 1919 and 1954. Without such credit, plaintiff is unable to establish a sufficient number of years of credited service to be eligible for a pension. The requirements in question provide that to be eligible for pension benefits, the applicant must have twenty years of classified service in the bituminous coal industry and five years of classified service after May 28, 1946, with an employer signatory to the National Bituminous Coal Wage Agreement then in effect. Defendants credited plaintiff with six and three-fourths years of classified service and two and one-half years of signatory service. Plaintiff contends that he is entitled to twenty-nine additional years of classified service and six and one-fourth years of signatory service in addition to that credited by defendants.

*Findings of Fact.*

1. Plaintiff is a citizen of Oklahoma. Defendants are citizens of states other than Oklahoma. The amount in controversy exceeds $10,000.00. Jurisdiction exists pursuant to 28 U.S.C. § 1332.

2. The plaintiff was born in 1897 and worked in the bituminous coal industry at various times between 1937 and 1951.

3. The individual defendants are the present Trustees of the United Mine Workers of America 1950 Pension Trust, which is one of four irrevocable trust funds established by the National Bituminous Coal Wage Agreement of 1974 as a continuation of the United Mine Workers of America Welfare and Retirement Fund of 1950.[1]

4. The Fund was established by the National Bituminous Coal Wage Agreement of 1950 as an irrevocable trust pursuant to Section 302(c) of the Labor Management Relations Act, 29 U.S.C. § 186(c).

5. The 1950 Wage Agreement gave the Trustees "full authority" within the limits of the Agreement and the Labor-Management Relations Act to establish criteria with respect to coverage and eligibility for benefits.

6. Acting pursuant to this grant of authority, the Trustees of the 1950 Fund promulgated, from time to time, various eligibility requirements for pension benefits. The pension eligibility requirements relevant to this litigation are:

(a) twenty years of classified, i. e., non-supervisory, credited service in the bituminous coal industry;

(b) five years of classified credited service after May 28, 1946, with an employer signatory to the National Bituminous Coal Wage Agreement then in effect; and

(c) fifty-five years of age.

7. The defendants have consistently held that, under the Agreement, eligibility depends on an applicant's establishing the required number of years' service in classified work. A year of service is defined as a calendar year during which an applicant

(a)(1) worked, subsequent to January 1, 1937, as an employee in a job classified in the coal industry and received wages in an amount equal to the product of one-half ($\frac{1}{2}$) the average number of days the bituminous mines in the United States were active, times the dai-

1. The four trust funds—the U.M.W.A. 1950 Pension Trust, the U.M.W.A. 1950 Benefit Trust, the U.M.W.A. 1974 Pension Trust and the U.M.W.A. 1974 Benefit Trust—were all created pursuant to, and within the scope of, § 302(c) of the Labor Management Relations Act, 1947, 29 U.S.C. § 186(c).

ly base rate paid in the bituminous coal industry; provided that for any year for which information is not available as to the average number of days the mines were active, the available data for the nearest year next preceding shall be used; provided that if applicant earned less than the minimum amount required for a year's service, credit for service shall be given to the nearest one-fourth (¼) year; and provided further that after April 1, 1971, such work must have been performed as an employee in a classified job for an employer signatory to the bituminous coal wage agreement then in effect.

(2) Worked, prior to January 1, 1937, as an employee in a job classified in the then existing coal wage agreement for an employer in the coal industry, in a minimum of at least six (6) months during a calendar year, provided that if applicant worked in less than six (6) months, credit for service shall be awarded to the nearest one-fourth (¼) year, based upon service in six (6) months equalling a year's service.[2]

8. The defendants have a consistent and well-established procedure for testing pension applications to determine whether the applicant has accumulated sufficient classified service to be eligible for benefits. A field service representative reviews the application and obtains other information, including social security wage records, company records of past employers, state mining records and statements made by the applicant's co-workers. The criteria considered in determining whether the applicant was regularly engaged in classified employment during the years for which credit is claimed are:

(a) Whether the applicant was a union member;

(b) Whether union dues were deducted from his wages;

(c) Whether the applicant held a union health card;

(d) Whether the applicant worked in a non-supervisory job;

(e) Whether the wage records disclose that wages paid were consistent with the type of employment claimed;[3] and

(f) Whether the applicant was paid at union scale hourly rates under the terms of the national wage agreements then in effect.

9. Once a determination is made that an applicant has satisfactorily established employment in a classified job, pension credit is given for the period he was so employed under the following formulas:[4]

(a) For service performed prior to January 1, 1937, a year of service is credited to the applicant for each calendar year during which the applicant was employed for a minimum of six months. If the applicant worked less than six months, credit is awarded to the nearest one-fourth year.

(b) For classified work performed after January 1, 1937, an applicant must have worked in a job classified in the coal indus-

---

2. Defendant's Exhibit No. 5 (Resolution No. 83,11.A, Board of Trustees of the United Mine Workers of America Welfare and Retirement Fund).

3. Plaintiff contends that he was a coal loader for many of the years for which he seeks credit. A loader is paid on a tonnage basis, according to the number of tons he loads per day. Therefore, the wage records for a coal loader should reveal a fluctuating salary, dependent on the number of tons loaded during a particular pay period. Other mine employees are paid on a salary basis and the wage records for these employees should reflect a constant salary.

4. The formulas in (a) and (b) are taken from Resolution No. 83 of the Board of Trustees of the United Mine Workers of America Welfare and Retirement Fund. *See* note 2 *supra* and accompanying text. Plaintiff's pension application was reviewed under the terms of Test One of the Settlement Agreement of January 2, 1973 in *Blankenship, et al. v. United Mine Workers of America Welfare and Retirement Fund of 1950, et al.,* Nos. 2186–69 and 2350–69 (D.D.C.1973). (Defendant's Exhibit No. 4). Test One, found at App. A, p. A–2 of the Settlement, incorporates the definition of a year's classified service used in Resolution No. 83.

try and received wages equal to the product of one-half the average number of days the bituminous mines in the United States were active times the daily base rate paid in the bituminous coal industry to receive one year of credit. If the applicant earned less than the minimum amount required for a year's service, credit is awarded to the nearest one-fourth year.[5]

10. Utilizing the formulas in 9(a) and (b) above, the defendants have credited the plaintiff with 6¾ years of classified service as follows:

| Years of Employment | Credit Allowed |
|---|---|
| 1937 | ¼ year |
| 1942 | ½ year |
| 1943 | 1 year |
| 1944 | 1 year |
| 1945 | 1 year |
| 1946 | ¾ year |
| 1947 | 1 year |
| 1948 | ¼ year |
| 1950 | ½ year |
| 1951 | ½ year |
| Total | 6¾ years [6] |

11. The defendants have also credited plaintiff with 2½ years of classified signato-

ry service subsequent to May 28, 1946, as follows:

| Years of Employment | Signatory Credit Allowed |
|---|---|
| 1946 | ¼ year |
| 1947 | 1 year |
| 1948 | ¼ year |
| 1950 | ½ year |
| 1951 | ½ year |
| Total | 2½ years |

12. The plaintiff has claimed, but defendants have refused to allow, additional classified service credit for the following years: [7]

| Claimed Employment | Credit Claimed |
|---|---|
| 1919–1936 | 18 years (one full credit per year) |
| 1937 | ¾ year |
| 1938–1941 | 4 years (one full credit per year) |
| 1942 | ½ year |
| 1946 | ¼ year |
| 1948 | ½ year |
| 1949 | 1 year |
| 1950 | ½ year |
| 1951 | ½ year |
| 1952–1954 | 3 years (one full credit per year) |
| Total | 29 years |

13. The plaintiff has also claimed, but defendants refuse to credit, the following additional years of signatory service:

**5.** The formulas in (a) and (b) involve different computations for determining a year's service prior to 1937 and service subsequent to that year. The reason for the distinction is that the Social Security Administration was formed in 1937 and social security wage records were thereafter available from which an applicant's yearly wages could be determined.

**6.** At the time plaintiff's application was processed, he was given only ¼ year credit for 1943 and no credit for 1944, giving him an allowed service credit total of 5 years. On October 21, 1977, five days prior to trial, defendant's attorney notified plaintiff and the court that in reviewing plaintiff's file the defendant's field representative, Wally Geiger, had determined that plaintiff was entitled to an additional ¾ year of classified credit for 1943 and a full year's classified credit for 1944. The total admitted service credit accorded plaintiff, therefore, is 6¾ years out of the necessary 20 years.

**7.** Plaintiff contends that he began work as a miner in 1919 with the Pea Ridge Mine in Oklahoma where he was employed through 1922. In 1923, he claims to have gone to Alabama where he worked at the Bankhead Mine

until 1927. He purportedly returned to Bakoshe, Oklahoma in 1927 and worked at a "pigeonhole" mine until 1935. In 1936, he states that he went to work for the Gillie Coal Company as a coal loader. While there, he claims to have joined the union in 1937. Plaintiff purportedly left the Gillie mine in 1942 to load coal for the Hillery Mine near Bakoshe and worked there until 1942. He then alleges that he went to work for the Big Four Coal Co., owned by Keener Powell, where he stayed until December, 1945. In January, 1946, he contends that he obtained employment at the Davis & Swindle Coal Company where he was employed through 1946. He then allegedly began work with the Star Coal Company in early 1947 and loaded coal there until 1953 when he went to work for the Blackstone Mine near Henryetta, Oklahoma. After working there one year, plaintiff states that he retired as a coal miner and has not worked in the coal business since 1954. He states that he kept records of his employment in the various mines throughout the years but that they were destroyed in a fire in the early 1970's.

| Claimed Employment | Credit Claimed |
|---|---|
| 1946 | ¾ year |
| 1948 | ½ year |
| 1949 | 1 year |
| 1950 | ½ year |
| 1951 | ½ year |
| 1952 | 1 year |
| 1953 | 1 year |
| 1954 | 1 year |
| Total | 6¼ years [8] |

14. In plaintiff's case, defendants' file (Defendant's Exhibit No. 1) reflects that plaintiff initiated his efforts to obtain pension benefits by filing his application with the Fund on April 6, 1973.

On March 14, 1974, plaintiff was notified by defendants that his application for a pension had been denied because he had failed to establish proof of five years of classified signatory service after May 28, 1946 or proof of twenty years of classified employment in the coal industry.

On May 10, 1974, plaintiff wrote to defendants, stating his dissatisfaction with their denial of his application. The letter was received on May 23, 1974.

Plaintiff wrote to his congressman, Mr. Carl Albert, on May 17, 1974, requesting help in securing benefits under the Fund. Mr. Albert forwarded the letter to the defendants along with his plea that plaintiff's claim receive consideration.

On June 10, 1974, plaintiff notified defendants of his request for a hearing concerning the denial of his application.

15. On June 18, 1974, defendants acknowledged plaintiff's letters and request for a hearing as notice of his appeal and forwarded him a copy of the worksheet used to determine the service credit which he had been allowed. Plaintiff was notified that a benefit eligibility hearing would be held on his case in Ft. Smith, Arkansas on October 22, 1974.

16. Plaintiff appeared at the hearing on October 22, represented by Clyde Stipe. The hearing officer was Charles Sickle. At the hearing testimony was taken and exhibits were introduced. Evidence at the hearing included oral testimony by plaintiff's son, James Wilkett, in support of plaintiff's eligibility. Plaintiff also introduced documentary evidence in support of his claim, consisting of ledger sheets of worker's names from a coal company he purportedly worked for in 1949.

17. The hearing officer also had available defendants' file on plaintiff which included his social security wage records and the worksheet which defendants used to determine the credit to which plaintiff was entitled. Plaintiff and his representative were allowed to review this file.

18. The social security records, obtained by defendants pursuant to plaintiff's authorization and included in the file, and the worksheet used to compute plaintiff's credit indicate that defendants utilized the following computations to determine allowed credit for the period 1937–1953:

| | Plaintiff's Coal Earnings as Reported on Social Security Records | Earnings Required for Full One Year Credit | Credit Awarded [9] |
|---|---|---|---|
| 1937 | $ 132.00 | $ 567.00 | ¼ year |
| 1938 | None | 486.00 | 0 |
| 1939 | 30.00 | 534.00 | 0 |
| 1940 | None | 606.00 | 0 |
| 1941 | None | 729.00 | 0 |
| 1942 | 373.00 | 861.00 | ½ year |
| 1943 | 279.50 | 957.00 | ¼ year |
| 1944 | 57.15 | 1,182.00 | 0 |
| 1945 | 1,359.85 | 1,257.00 | 1 year |
| 1946 | 773.39 | 1,191.00 | ¾ year |
| 1947 | OK | 1,457.00 | 1 year |
| 1948 | 311.68 | 1,470.00 | ¼ year |
| 1949 | None | 1,103.00 | 0 |
| 1950 | 621.35 | 1,338.00 | ½ year |
| 1951 | 693.37 | 1,646.00 | ½ year |
| 1952 | None | 1,565.00 | 0 |
| 1953 | None | 1,743.00 | 0 |

**8.** The court notes that plaintiff erroneously totalled these claimed credits as 5¼ years rather than 6¼. Plaintiff also miscalculated the total of his claimed credit for the period 1937–1954, over-crediting himself by one-half year.

**9.** Although the worksheet reveals that plaintiff received only one-fourth year of credit for 1943 and no credit for 1944, defendants later recomputed these figures and gave plaintiff three-fourths year's credit for 1943 and a full year's credit for 1944. *See* note 6 *supra.*

**510**

19. The worksheet further reflects that no credit was awarded for plaintiff's claimed employment prior to 1937 because plaintiff failed to submit sufficient proof of such employment.

20. The hearing officer's decision to sustain the denial of plaintiff's application was based on the fact that plaintiff failed to offer tangible proof of his employment in the bituminous coal industry prior to 1937; the wage record of plaintiff's earnings subsequent to 1937 as reflected by the social security records; and plaintiff's failure to develop additional substantive evidence establishing plaintiff's qualifications under Fund eligibility requirements.

21. The court further finds, on the basis of evidence adduced at the trial of this case, that plaintiff has failed to establish his employment in the coal industry for those years he has claimed credit and defendants have denied it. The court bases this finding on the following facts with respect to the disputed periods:

(a) From 1919 until 1937, no records or other documented evidence exist, which verify plaintiff's alleged employment service in the coal industry. Plaintiff's wife, Ann Wilkett, was unable to testify as to exact dates and locations of plaintiff's employment prior to 1937. Plaintiff's son, Elmer Jackson Wilkett, offered no testimony as to plaintiff's employment prior to 1941. Plaintiff's witness Ernest Sutmiller, a co-worker, testified only as to plaintiff's employment in 1947.

(b) Social security wage records for years subsequent to 1937 indicate no earnings by plaintiff in excess of the wages which defendants have credited to plaintiff and which were used to determine plaintiff's eligibility. Plaintiff produced no evidence of earnings in excess of those reflected on the wage records for any year subsequent to 1937 until his retirement in 1953.

(c) Plaintiff had no union health card for any period except May, 1953 through

August, 1953. This card was erroneously issued and recalled in August, 1953.

(d) There is no evidence that plaintiff was a member of the union or paid union dues.

*Conclusions of Law.*

■ 1. Judicial review in cases such as this is limited. It is well-established that a reviewing court will intervene in the administration of a pension plan only where the trustees have acted arbitrarily, capriciously or in bad faith or where their determination is not based on substantial evidence. *Norton v. IAM National Pension Fund*, 553 F.2d 1352 (D.C.Cir. 1977); *Phillips v. Kennedy*, 542 F.2d 52 (8th Cir. 1976); *Johnson v. Botica*, 537 F.2d 930 (7th Cir. 1976); *Pete v. UMWA Welfare & Retirement Fund of 1950*, 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975); *Maness v. Williams*, 513 F.2d 1264 (8th Cir. 1975); *Beam v. International Organization of Masters M. & P.*, 511 F.2d 975 (2d Cir. 1975); *Giler v. Board of Sheet Metal Workers of So. Cal.*, 509 F.2d 848 (9th Cir. 1975); *Gaydosh v. Lewis*, 33 U.S.App.D.C. 274, 410 F.2d 262 (1965); *Danti v. Lewis*, 114 U.S.App.D.C. 105, 312 F.2d 345 (1962).

■ 2. The trustees are empowered to formulate, from time to time, eligibility requirements for applicants seeking pension benefits. *Pete v. UMWA Welfare and Retirement Fund of 1950*, 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975).

■ These eligibility requirements are binding on the court so long as they are reasonable and are reasonably applied to the applicant. *Miniard v. Lewis*, 128 U.S. App.D.C. 299, 387 F.2d 864 (1957), *cert. denied*, 393 U.S. 873, 89 S.Ct. 166, 21 L.Ed.2d 144.

■ 3. The eligibility requirements under which plaintiff's application was denied are set forth in Finding No. 6. These requirements are not arbitrary or capricious. *See Pete v. UMWA Welfare & Retirement Fund of 1950*, 171 U.S.App.D.C. 1, 517 F.2d 1275 (1975); *Roark v. Boyle*, 141 U.S.App. D.C. 390, 439 F.2d 497 (1970).

4. The criteria utilized by the defendant Trustees to determine whether, for purposes of pension eligibility, an applicant has established the requisite years of classified service are set out in Findings numbered 7–9. These criteria are not arbitrary or capricious.

5. The criteria used to determine regular employment for purposes of crediting an applicant with classified or signatory service were not arbitrarily or capriciously applied to plaintiff.

The defendants' determination that plaintiff had not completed the requisite classified service and signatory service to qualify for a pension was not arbitrary or capricious and was supported by substantial evidence. The record before the Trustees included substantial evidence that plaintiff was entitled to only 6¾ years of classified service and 2½ years of signatory service.

6. The evidence adduced in this court shows that plaintiff has failed to establish sufficient proof of regular employment in the coal industry for those years in which he claimed, but defendants denied him, credit for classified and signatory work. Accordingly, plaintiff is ineligible under the Fund requirements to receive pension benefits.

Accordingly, the court concludes that plaintiff has failed to establish that defendants' decision denying him pension benefits was arbitrary or capricious or that such decision was not based on substantial evidence.