Carl FOGARTY, Plaintiff,

v.

UNITED MINE WORKERS OF AMER-ICA HEALTH AND RETIREMENT FUNDS, Joseph Connors, et al, Trustees, Defendants.

Civ. A. No. 86–0129–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Nov. 24, 1987.

Hugh F. O'Donnell, Castlewood, Va., for plaintiff.

Campbell, Young & Crewe, Wytheville, Va., Gerald E. Cole, Jr., Washington, D.C., for defendants.

MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

This suit involves a dispute between a miner and the Trustees of a miners' pension fund. The miner complains that the Trustees wrongfully denied him pension benefits by failing to give his claim a full and fair review. The court finds that the Hearing Officer's decision to exclude non-documentary evidence was arbitrary and capricious and that her decision to deny a pension was not supported by substantial evidence. Accordingly, the court orders the Trustees to award the miner a pension.

I.

The plaintiff in this suit is Carl E. Fogarty, a 62–year old former miner who worked in the bituminous coal industry between 1941 and 1983. Fogarty applied for a pension under the United Mine Workers of America (UMWA) 1974 Pension Plan. The 1974 Plan requires a person to have ten full years of signatory service in the bituminous coal industry in order to qualify for a pension. The Field Service Office responsible for processing Fogarty's application denied him a pension because he failed to produce evidence that he had ten years of signatory service. The Service Office gave him credit for only 9 and ¾ years of service. Fogarty requested a hearing to appeal the denial.

At the hearing, the dispute centered on the evidence Fogarty presented to gain credit for an additional quarter to fulfill the ten year requirement. The year in question is 1969. The Plan requires a miner to have received at least $3,429.00 for 1969 in order to get a full year of credit. Because Fogarty needed only one more quarter to qualify, he needed only one fourth of that amount, or $857.25. Unfortunately, his classified signatory wages to-

taled only $814.76 as shown by Social Security Administration (SSA) records.

Fogarty, however, had non-documentary evidence showing that he had earned more than was reflected by the SSA records. Fogarty states that he worked for the Double M Coal Company for 5½ days in 1969. These wages totalled $162.00, which is enough to place him above the threshold for pension eligibility. Mr. Fogarty also proffered the testimony of two witnesses to further support his claim. One witness was the owner of the Double M Coal Company who verified that Fogarty had earned $167.00 in wages as a welder. The other witness was Charles Stapleton who stated that one of the days in 1969 when Fogarty worked for Double M, Stapleton had found Fogarty on the road in a disabled vehicle. Stapleton stated that he took Fogarty to the mines where he was able to work one-half day, accounting for part of the 5½ day claim.

Fogarty conclusively established that the SSA records relied on by the Hearing Officer were inaccurate. For example, he presented a check from Metco Company dated October 22, 1976 that did not appear in the SSA wage records. Fogarty also presented documentary evidence from Western Mining Company showing wages received but not reflected in SSA records. Finally, Fogarty demonstrated that his copy of his earnings record did not coincide with UMWA's copy. This record stated employment at companies for which he never had worked.

The Hearing Officer obtained more evidence *ex parte*. She called Clyde Mullins, the owner of Double M, but could only reach the bookkeeper, Patti Needham. Ms. Needham advised the Hearing Officer that Double M did not have any records on Carl Fogarty although they did have records on other employees. Ms. Needham went on to confirm that Clyde Mullins, the owner, did remember that Mr. Fogarty worked for him but did not remember the dates. She further told the Hearing Examiner that, occasionally, when someone only works for a few days, Double M will report wages as miscellaneous wages and, consequently,

not pay Social Security taxes. The Hearing Examiner also *ex parte* contacted the UMWA District 28 Office to ascertain the rate of pay for an underground welder in 1969. She was told that there was no such classification at that time, but that someone classified as an outside welder was paid $4.47 per hour in 1969.

Fogarty's contention that he was not afforded a full and fair hearing is primarily based upon an evidentiary rule adopted by the Hearing Examiner. She ruled she could only accept documentary proof and not sworn testimony. Unless a person could present documentary proof, such as SSA records, actual book records, payroll stubs or other documentary evidence, sworn testimony, including affidavits and statements, was not admissible to prove that a person earned wages toward a pension. Fogarty also claims that he was not afforded a full and fair hearing because he did not have an opportunity to cross-examine Ms. Needham, the bookkeeper for Double M Coal Company, who was contacted *ex parte* by the Hearing Examiner, and did not have an opportunity to cross-examine or check on the information obtained from UMWA District 28.

II.

When reviewing a decision of the UMWA Pension Fund, a district court is limited to determining whether the decision was arbitrary or capricious, supported by substantial evidence or contrary to law. *See Horn v. Mullins*, 650 F.2d 35, 37 (4th Cir.1981). Although a court must presume SSA wage records accurately reflect an individual's earnings, *see* 42 U.S.C.A. § 405(c)(4)(B) (1983), it can consider "additional substantive evidence." *See Wilkett v. Davis*, 442 F.Supp. 505, 510 (E.D.Okla.1977).

The key issue in this case is whether the Hearing Officer properly excluded non-documentary evidence. She repeatedly stated that she had to go by the Plan and needed check stubs, payroll records, tax records, SSA records, etc., to support her findings. In Paragraph 9 of her decision of July 8, 1986, the Hearing Officer stated:

Appellant has not established proof of earnings at Double M Coal Company in the year 1969. Credit cannot be given for this alleged employment without proof of earnings of hours worked (Article IV B(1)(a) of the 1974 Pension Plan). Proof of earnings may be established through payroll records, W–2 forms, pay statements or other documents of a similar nature. Affidavits may be used in conjunction with other substantive proof of earnings to verify an applicant's type of work performed. Affidavits, in themselves, do not constitute sufficient proof of employment.

■ The court believes the Hearing Officer acted arbitrarily and capriciously by excluding non-documentary evidence. There is no support for this rule. The parties have provided the court with copies of the Bituminous Coal Wage Agreement of 1984; the UMWA 1974 Pension Plan, and the Summary Description of the 1974 Pension Plan. Neither these documents nor the defendants' brief discusses this alleged rule. In fact, the record establishes to the contrary that the Hearing Officer is entitled to receive such evidence. On page eleven (11) of the Summary Plan Description,[1] the following quotation is found:

> You can bring someone to present your case at the hearing, or you can present your case yourself. You can also bring witnesses to vouch for periods of employment *for which you have no written records.* (Emphasis added)

Furthermore, case law supports the rule that a statement from an employer is evidence that must be considered as proof of wages. *Perzio v. Combs,* 2 EBC 2239 (W.D.Pa.1981). In *Perzio* the Funds disallowed time claimed by Perzio, the pension applicant, because the owner of the mine did not support Perzio's claim, and his evidence was believed over and above evidence presented by the UMWA Local Union 850. In *Perzio* the court stated as follows:

> [T]he 1950 Pension Plan provides that *evidence other than employer* statements may be credited only if the alternative evidence provides a sufficient basis for calculating pension credit under the Plan.

*Id.* at 2240. The court, therefore, gave credence to the fact that a statement of an employer is to be credited whereas statements of co-workers who have claimed to work with the claimant are not so credited.

■ Applying the appropriate evidentiary rule, this court must now consider whether substantial evidence exists to support the finding of the Funds in this case. As previously stated, Fogarty's sworn testimony is supported by both his employer and a witness who has no apparent interest in this case. These statements explain why Fogarty worked only one-half (½) day on one of the days he claims. Fogarty's testimony is also bolstered by the bookkeeper's statement that the records of persons who only work a few days are occasionally included in miscellaneous wages and not subject to individual payroll statements. The bookkeeper also corroborates the statement of the owner. The reason that one would give credence to management testimony and not co-worker testimony is because one may assume that co-workers are more apt to be in collusion with their fellow workers. Management, on the other hand, is generally in opposition to the worker and less likely of collusion. It would therefore appear that a statement of the owner and manager would be the very best of evidence.

Of course, the fact remains that UMWA District 28 furnished an *ex parte* statement to the Hearing Officer to the effect that the amount of wages that Fogarty claims to have been paid did not coincide with the Union pay scale at that time. However, many small coal companies through the years have signed Union contracts and proceeded to pay their employees less than the Union scale. Wages that do not exactly coincide with the Union records may also

---

1. 29 C.F.R. 2560.503(1)(b) (1987) provides that a claim procedure will be deemed reasonable only if it is described in the summary plan description. 29 C.F.R. 2520.102–3 requires the summary plan description to accurately reflect the contents of the plan.

have been paid through mistake or other innocent reasons. Accordingly, the court does not consider this minor wage discrepancy to be of much importance. It certainly does not amount to substantial evidence to overcome the overwhelming evidence supporting this claimant's assertion that he actually had the extra one-fourth year of credit toward his pension.

The court is of the opinion that the claimant has been ill treated in this case. The Hearing Officer found Fogarty to have earnings in the year 1969 in the sum of $814.76, whereas the amount that he needed to receive the one-fourth year credit was $857.25. The claimant cannot be faulted for the fact that no record existed, especially when the Plan provides for a way of obtaining evidence where no other evidence exists. The plaintiff followed that procedure to present evidence in this case. The exclusion of this evidence was arbitrary and capricious, and no substantial evidence exists to support the denial of the pension.

### CONCLUSION

The court ORDERS the Trustees to award a pension to the miner in this rather unique case. Although the miner did not have documentary evidence of signatory service in 1969, the evidence that he did have, including the statement of his former employer, is sufficient to meet the stringent burden of proof required. This court's decision is not intended to give credence in every case to non-documentary evidence. Care should be taken to examine the peculiar facts of each case to ensure that justice prevails.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record.