105 F.3d 659
 Pens. Plan Guide P 23931X
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Donald R. SPEARS, Plaintiff-Appellant,
v.
Joseph P. CONNORS, Sr., Donald E. Pierce, Jr., Thomas H.
Saggau, William Miller, and Paul R. Dean, Trustees
of United Mine Workers of America Health
and Retirement Funds,
Defendants-Appellees.
 No. 95-6291.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1997.
 
 1
 On Appeal from the United States District Court for the Eastern District of Kentucky, No. 94-00359; Joseph M. Hood, District Judge.
 
 
 2
 E.D.Ky.
 
 
 3
 REVERSED.
 
 
 4
 Before: NELSON and DAUGHTREY, Circuit Judges; and COHN, District Judge.*
 
 
 5
 COHN, District Judge.
 
 
 6
 This is an Employee Retirement Income Security Act (ERISA) case. 29 U.S.C. § 1132. Donald Spears (Spears) appeals an order denying his motion for summary judgment and granting summary judgment in favor of defendants-appellees, who were sued in their capacities as Trustees of the United Mine Workers of America (UMWA) 1974 Pension Trust.[1] Spears alleged that the Trustees wrongfully denied him a full pension by erroneously determining his length of service as a coal miner.
 
 
 7
 Spears argues on appeal that the trial court erred in granting summary judgment for the Trustees for three reasons: 1) the Trustees' decision to deny the pension was not based on substantial evidence or principled reasoning; 2) the trial court misapplied the law by failing to evaluate the evidence presented to the Trustees; and 3) the Trustees breached their fiduciary duty to Spears by failing to consider relevant evidence.[2] The Trustees respond that the motion was properly granted.
 
 
 8
 For the reasons that follow, we reverse the order granting the Trustees' motion for summary judgment and denying Spears's motion; we also order that Spears be granted full pension benefits.
 
 I. Facts
 A. The Pension Benefit Plan
 
 9
 The UMWA operates a group of employee benefit trusts, collectively referred to as the UMWA Health and Retirement Funds. One of these trusts is the 1974 Pension Trust (the Trust). The Trust is a multiemployer employee pension covered by the ERISA.
 
 
 10
 The Trust is governed by the UMWA 1974 Pension Plan (the Plan). Under the terms of the Plan, "[t]he Trustees ... shall have full and final determination as to all issues concerning eligibility for benefits.... The Trustees are authorized to promulgate rules and regulations to implement this Plan, and those rules and regulations shall be binding upon ... Participants claiming benefits under this Plan."
 
 
 11
 The Plan provides that a miner in Spears's position is entitled to a full retirement pension if he has worked for twenty years of credited service. Credited service is computed based upon the number of hours worked during a year: 1,000 hours of service[3] equals a full year of credited service. Partial credit, in quarter-year intervals, is granted for fewer hours of service: for example, a miner who works 750 to 999 hours in a year will be given .75 of a year of credited service.
 
 
 12
 The Plan provides a method of determining credited service for periods "for which records of hours of service are not available or it is not feasible in light of the administrative and cost difficulties involved to compile a record of service." In such periods,
 
 
 13
 an applicant shall be deemed to have worked a thousand hours of service if the employee received wages in an amount equal to the product of (i) the lesser of 125 days or 1/2 the average number of the days the bituminous mines in the United States were active, multiplied by (ii) the daily basic rate paid in the bituminous coal industry for that year.
 
 B. Spears's Pension Application
 
 14
 Spears worked as a coal miner from 1958 until an accident in 1978 permanently disabled him from coal mine work. Spears applied to the Trust for a retirement pension in 1992. There was no direct documentary evidence of Spears's hours of service for his employment before 1976 because the UMWA did not then keep such records. The Trustees therefore determined Spears's credited service for the period 1958 to 1975 by obtaining a complete earnings statement from the Social Security Administration (SSA), and comparing Spears's earnings to a chart of wages, organized by year, computed under the alternative method of determining credited service described above.
 
 
 15
 The Trustees determined that Spears was entitled to a full year's credited service for each of the years 1962 to 1978. The Trustees granted no credit for 1958, .75 credit for 1959, .50 credit for 1960, .75 credit for 1961, and .75 credit for 1979. Thus, Spears was credited with a total of 19.75 years of service, and he was denied a full pension.[4]
 
 C. Spears's Pension Review
 
 16
 Spears sought review of the pension determination, arguing that he was entitled to the additional .25 years of service that would provide him a full pension because the Trustees erred in analyzing his work history for the years 1958 to 1961. At a pre-hearing conference, Spears presented evidence in support of his argument that he worked more than 1,000 hours in each of the contested years. The conference was described in a memorandum to Spears's pension file; the memorandum stated:
 
 
 17
 [a]fter discussion with several individuals, it was decided [Spears] ... must provide additional documentation to determine eligibility. The following must be provided:
 
 
 18
 .... Coal Company records.
 
 
 19
 .... Tax forms, W-2 forms, pay staements [sic] reflecting hours.
 
 
 20
 .... Payroll records reflecting additional wages that were not reported to the Social Security Administration.
 
 
 21
 A hearing was then held,[5] at which Spears presented the following evidence:
 
 
 22
 6. A "pool worker" is one of a group of four or five men who shoveled coal into underground rail cars. The group would be paid based only on the number of cars per day they loaded with coal, and then the group would divide the pay amongst themselves.
 
 
 23
 Spears presented additional pay stubs from 1962 ($1.25 per hour for 61.24 hours), 1963 ($1.50 per hour for 79 hours and 14 overtime hours at $2.25 per hour), and 1964 ($1.50 per hour for 90 hours).
 
 
 24
 In addition, Spears argued that the Plan's method of determining credited service resulted in automatic denial of full-year credit if the miner earned less than the prevailing wage rate since the Plan determined the number of credited hours by dividing the miner's total annual earnings by the prevailing wage rate. If a miner earned less than the prevailing rate, as Spears says he did, he is considered to have worked fewer hours than he actually worked.
 
 
 25
 Spears's application for a full retirement pension was denied on review, as was a request for re-evaluation of the decision. The denial stated:
 
 
 26
 [a]t the hearing, Mr. Spears and his representative presented several arguments as to how Mr. Spears should receive additional service pension credit.... The use of material that could directly link Mr. Spears to the coal employer(s) for specific earnings or hours worked during each calendar year was not submitted. That is to say, there was no evidence such as company payroll books, time books, W-2's, pay slips, etc. to establish that the Social Security wage record of Mr. Spears was in error and if established as in error, the extent of the error in each calendar year.
 
 
 27
 This is the only basis for the Trustees' decision on review.
 
 D. The Lawsuit
 
 28
 Spears sued the Trustees, seeking judicial review of their determination, and arguing that he was entitled to at least twenty years of credited service and was wrongly denied the full pension to which he was entitled. 29 U.S.C. § 1132(a)(1). Particularly, Spears argued that the Trustees failed to follow the Plan's method of determining credited service, and failed to evaluate the evidence Spears presented. Spears and the Trustees filed cross-motions for summary judgment. The trial court granted the Trustees' motion and denied Spears's motion. Spears filed a timely notice of appeal.
 
 II. Standard of Review
 
 29
 We review the grant of summary judgment de novo. Russo v. City of Cincinnati, 953 F.2d 1036, 1041 (6th Cir.1992). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 30
 The Trustees are authorized to promulgate regulations to implement the Plan, so judicial review of their decisions is limited to the question whether they abused their discretion to interpret the Plan. Baker v. UMWA Health and Retirement Funds, 929 F.2d 1140, 1144 (6th Cir.1991) (citing Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 109-12 (1989)). Under "abuse of discretion" review, a decision to deny pension benefits will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Id. Therefore there is no factual dispute that would prevent a grant of summary judgment. Though the parties dispute whether Spears worked twenty years as a miner, that question is not before us. The only question before us is whether the Trustees abused their discretion in finding that Spears worked less than twenty years.
 
 III. Analysis
 A. 1958, 1960 and 1961
 
 31
 Spears's argument for credit for the years 1958, 1960, and 1961 required the Trustees to make assumptions about the hours Spears worked and his wage rate that did not have direct documentary support. For 1958, the SSA wage record shows total wages of $12.79, and there is no disinterested evidence specific to 1958 to counter this showing. For 1960, there is no disinterested contemporaneous evidence regarding Spears's total hours or wage rate: Spears asked the trustees to assume that pay stubs from 1961 and later established the hours he worked and the wages he earned in 1960.
 
 
 32
 There is one pay stub from 1961, but it covers a period of only seven days and states nothing about the hours Spears worked. The Trustees would have to assume a constant rate of pay and consistent eight hour days to find enough hours of service to provide the additional quarter of credited service for 1961. In addition, Spears takes into account only the daily wage reported on the pay stub and not the additional money the pay stub shows he received per ton of coal hauled. According to the pay stub, Spears earned $3.73 per day for the coal he hauled in addition to his $14.25 wage. Therefore, the pay stub shows earnings of $17.98 per day. Again, assuming a constant rate of pay and eight hour days, Spears would have had to work only 831 hours to earn the $1,867.14 on his SSA wage record, and he would not be entitled to the extra credit. Spears's argument requires too many inferences to be drawn.
 
 B. 1959
 
 33
 Spears's argument for a full-year's credit for 1959, however, is that the SSA wage record and disinterested contemporaneous evidence concerning Spears's wage rate in 1959 combine to show that Spears worked at least 1,000 hours. Spears presented the affidavit of his employer, Grover Samons, which stated that Samons's employees at the Jody Lee Coal Co. earned "less than $10.00 a day" in 1959. Samons's affidavit also stated that Spears "worked an 8 hour a day, 5 day a week job." Samons's statement comes from a disinterested witness and comports with Spears's affidavit, which stated that he averaged $8 per day in 1959. There is nothing in the record calling this evidence into question.
 
 
 34
 The evidence for 1959 shows Spears earned at most $10 per day in an eight hour day, so his average pay rate at Jody Lee was at most $1.25 per hour.[7] The SSA wage record shows that of the $1,913.50 Spears earned in 1959, $1,295.72 was from Jody Lee. At $1.25 per hour, Spears had to work 1,036 hours in 1959 at Jody Lee alone, and is therefore entitled to a full year's credit for 1959. There is no evidence of additional sources of income, as there was in 1961, that would skew this result. The SSA wage record corroborates Spears's argument that he worked more than 1,000 hours in 1959 in a different way as well: the wage record shows that Spears worked at Jody Lee for two quarters in 1959; working 40 hour weeks with no overtime, Spears would have had to work 26 weeks--two quarters--to earn $1,295.72.
 
 
 35
 Unlike the years 1958, 1960, and 1961, no inferences regarding Spears's work in 1959 are necessary to find that Spears had worked at least 1,000 hours. The evidence was all there for the Trustees: the SSA wage record, a former employer's disinterested affidavit, and Spears's affidavit. In an unpublished, per curiam decision, we held that a wage record combined with the miner's affidavit alone was sufficient to warrant ordering the payment of benefits under the Plan. Shockley v. UMWA, 41 F.3d 1507 (6th Cir.1994).
 
 
 36
 The Trustees made no finding that it would not be "feasible in light of the administrative and cost difficulties involved to compile a record of service" for 1959. Indeed, as shown above, Spears presented evidence from which the Trustees could have easily and accurately determined Spears's total hours for 1959. The Trustees' decision amounts to a blanket refusal to consider non-documentary evidence concerning the number of hours Spears worked. This refusal is not warranted by the Plan and serves no principled purpose. In addition, the Trustees' decision was not supported by substantial evidence. As such, the Trustees abused their discretion. Baker, 929 F.2d at 1144. See, e.g., Fogarty v. UMWA Health and Retirement Funds, 673 F.Supp. 1410, 1412 (W.D.Va.1987) ("The court believes the Hearing Officer acted arbitrarily and capriciously by excluding non-documentary evidence.").
 
 
 37
 The Trustees need not rely on Spears's word alone to find twenty years of credited service, so there is no reason to fear "an avalanche of spurious claims." Baker, 929 F.2d at 1146. "[J]udicial review of the denial of benefits must be undertaken with a 'stern hand and flinty eye.' To do otherwise would unduly encourage the Trustees to overvalue their duty to preserve the trust corpus 'at the expense of the intended beneficiaries.' " Pratt v. Connors, 857 F.2d 231, 234 (4th Cir.1988) (quoting Maggard v. O'Connell, 671 F.2d 568, 572 (D.C.Cir.1982)).
 
 IV. Order
 
 38
 For the reasons stated above, we REVERSE the order granting summary judgment to the Trustees and denying summary judgment to Spears, and ORDER the payment of full pension benefits to Spears under the Plan.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The named defendant-appellees are no longer trustees
 
 
 [2]
 Spears did not raise the breach of fiduciary duty argument before the trial court, and therefore we will not consider it. See Foster v. Barilow, 6 F.3d 405, 407 (6th Cir.1993)
 
 
 [3]
 The Plan defines "Hour of service" as "each hour for which the participant is directly or indirectly paid or entitled to be paid by the Employer ... for the performance of duties...."
 
 
 [4]
 Spears was granted a deferred vested pension, which does not include health or life insurance benefits as does the full retirement pension, and provides lower monthly benefit payments
 
 
 [5]
 No transcript is kept of such hearings, but the hearing was summarized in a Hearing Record. The Hearing Record, however, erroneously states that no documentary evidence was submitted
 1958 . SSA wage record showing total wages of $12.79.
 . A statement by Spears's father that Spears was a pool worker[6]
 in 1957 and started to work for Grover Samons's mine, Jody Lee
 Coal Co., in 1958.
 
 
 [6]
 A "pool worker" is one of a group of four or five men who shoveled coal
 into underground rail cars. The group would be paid based only on the number
 of cars per day they loaded with coal, and then the group would divide the
 pay amongst themselves.
 . Grover Samons's affidavit, stating that Spears worked at Jody Lee
 in the last quarter of 1958 as a pool worker, and though records
 were no longer available and Samons could not remember Spears's
 exact hours, Spears worked eight hours per day, five days a week
 while he worked. However, "[h]e did not work for me very long."
 The affidavit also stated that pool workers generally made less
 than $10 per day.
 . Spears's affidavit, stating that he worked more than 1,000 hours,
 averaged $8 per day, or $1.25 per ton of coal hauled.
 Spears argued that this evidence was consistent with a pay stub from
 May of 1962, which puts Spears's pay at $1.25 per hour, and shows
 that Spears worked more than the SSA wages indicate.
 1959 . SSA wage record showing total wages of $1,913.50.
 . Samons's affidavit, stating that Spears worked at Jody Lee the
 first two quarters of 1959 as a pool worker and averaged less
 than $10 per day income.
 . Spears's affidavit, stating that he worked at Jody Lee as a pool
 worker, averaging $8 per day or $1.25 per ton.
 Spears argued that at $1.25 per hour he would have had to work 1,530
 hours to earn $1,913.50. Alternatively, at $8 per day and 8 hours
 of work per day, Spears would have had to work 1,914 hours to earn
 $1,913.50. Therefore, he was entitled to a full year's credit for
 1959.
 1960 . SSA wage record showing total wages of $1,443.20.
 . Spears's affidavit, stating that he worked for Tackett & McKinney,
 Johnson & Vanover, and Stonewall McKinney as a pool worker,
 earning $8 per day or $1.25 per ton.
 . Mine records showing that Johnson & Vanover employed four men for
 
 
 [111]
 days, and Stonewall McKinney employed three to five men for
 
 
 [108]
 days
 Spears argued that at $1.25 per hour he would have had to work
 1,154.56 hours to earn $1,443.20. At $8 per day, he would have had
 to work 180.4 days; if he worked 8 hours per day, he would have had
 to work 1400 hours. Therefore, according to Spears, he was entitled
 to a full year's credit for 1960.
 1961 . SSA wage record showing total wages of $1,867.14.
 . SSA wage record showing employment during all four quarters.
 . Spears's affidavit, stating that he worked as a pool worker.
 . A pay stub from May, 1961, stating wages at $14.25 per day for
 seven days of work plus approximately $0.31 per ton of coal
 hauled.
 Spears argued that at $14.25 per day, with an eight hour day, he
 would have had to work 1,048 hours to earn $1,867.14. At $1.25 per
 hour, he would have had to work 1,500 hours.
 
 
 [7]
 The more Spears earned per hour, the fewer hours he had to work to earn the amount reflected in the SSA wage record. Therefore, taking the highest pay rate reflected in the record makes it even harder for Spears to show his credited service