**William L. BAKER, Plaintiff–Appellant,**

v.

**UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUNDS, Defendant–Appellee.**

**No. 90–5626.**

United States Court of Appeals, Sixth Circuit.

Submitted Feb. 4, 1991.

Decided April 9, 1991.

W. Jeffrey Scott, Grayson, Ky., for plaintiff-appellant.

Andree M. St. Martin, David W. Allen, Charlotte von Salis, United Mine Workers of America Health & Retirement Funds, Washington, D.C., Bruce A. Levy, Pikeville, Ky., for defendant-appellee.

Before JONES and NELSON, Circuit Judges, and JOINER, Senior District Judge.[*]

PER CURIAM.

Plaintiff-appellant William L. Baker appeals the district court's grant of summary judgment in favor of the defendant-appellee, the Trustees ("Trustees") of the United Mine Workers of America ("UMWA") Health and Retirement Funds ("1950 Pension Trust"), in this action for pension ben-

efits. The district court sustained the Trustees' determination that Baker was not eligible for pension benefits from the 1950 Pension Trust. For the reasons set forth below, we affirm.

## I.

Baker is a former coal miner who claims to have been employed in the bituminous coal industry from 1929 to 1958. Defendants are the Trustees of the UMWA 1950 Pension Trust, one of five collectively-bargained employee benefit trust funds which together are referred to as the UMWA Health and Retirement Funds.

Eligibility for benefits from the 1950 Pension Trust is governed by the UMWA 1950 Pension Plan ("the Plan"). J. App. at 57–62 (reproduced in relevant part). To be eligible for pension benefits under the Plan, an applicant must establish, among other things, that he has completed at least twenty years of service as a classified employee in the coal industry, including five years of service with coal operators signatory to a National Bituminous Coal Wage Agreement, a collective bargaining agreement between an association of coal employers and the UMWA. *Id.* at 57, 61. For years prior to 1937, an applicant receives service credit for each calendar year in which he worked as a classified employee for at least six months. *Id.* at 59. After 1937, an applicant receives credit for each year of service in which he worked at least 1000 hours as a classified employee. Where records of hours worked are not available, credit is given based upon receipt of specified levels of wages in each year. *Id.* at 58. Further, even if an applicant establishes the required years of service, he may not receive credit for work performed while he was "directly connected with the ownership, operation or management of a mine." *Id.* at 60.

Baker filed an application for pension benefits with the 1950 Pension Trust on October 4, 1986. On his application, he

---

[*] Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

claimed to have worked in the coal industry for almost thirty years for a number of different coal companies. On February 12, 1987, Baker was notified by the Trustees that his application had been denied because he had not established the requisite twenty years of classified service in the coal industry. The Trustees calculated that Baker had earned sixteen and one-half years of classified service for his employment with Lando Mines from 1941 until 1958. However, the Trustees did not allow any credit for alleged coal mining work prior to 1941.

In March 1987, Baker filed a request for a hearing and a hearing was held on May 11, 1987. On July 2, 1987, Baker was notified that his application for benefits had been denied on appeal. Baker then initiated this action in the Eastern District of Kentucky in October, 1987. On May 31, 1988, Baker and the Trustees filed cross-motions for summary judgment. These motions were referred to a Magistrate for a report and recommendation. The magistrate issued his report on November 9, 1988, recommending remand of Baker's file to the Trustees for reconsideration of several pieces of evidence which the Trustees had failed to properly consider. *Id.* at 98–99. Specifically, the magistrate recommended reconsideration of Baker's 1942 application for a coal miner's certificate, the testimony of a co-worker, Ottis Roark, state mining records for 1933–34 and statements from co-workers Charles and Roy Blevins. *Id.* In addition, the magistrate recommended that the Trustees consider such additional evidence as Baker could produce as to hours worked or wages received as well as affidavits by Calvin Littleton and Baker's wife, Mary, which were not part of the original record of review. *Id.* at 97 and 99. The district court adopted the magistrate's recommendation and the case was remanded to the Trustees.

On remand, Baker attempted to show that he was employed in the coal industry from 1929 until 1940 at three separate coal companies. Perhaps the clearest way to examine the facts before the Trustees is to look at the facts Baker proffered to support each period of employment.

*Biggs Coal Company, 1929–34*

Baker claimed creditable work time in the coal industry for work performed at Biggs Coal Company ("Biggs Coal") from 1929 to 1934. To get pension credit for work performed during this period, Baker must demonstrate that he worked as a classified employee for an employer in the coal industry for at least six months of each year claimed. *Id.* at 59. Further, Baker cannot receive credit for any time during which he was connected to the ownership, operation or management of a mine. *Id.* at 60.

On his pension application, Baker claimed that he worked for Biggs from 1929 to 1936. Later he revised this assertion to the period from 1929 to 1934. To support his claim that he was an employee at Biggs, Baker produced several pieces of evidence including several co-worker statements, an affidavit from his wife, a 1942 application for a West Virginia coal mining certificate which indicated that he had fifteen years of prior mining experience (implying that he had begun mining in 1927), and Kentucky state mining records. The Trustees requested additional information which might help to establish the time worked during each year, but Baker was unable to produce any additional evidence because his federal income tax records had been destroyed by the IRS, no Social Security records existed for Baker prior to 1941 and he had no pay stubs because he alleged he was paid in cash.

During a meeting between the Trustees and Baker, held on September 8, 1989, Baker admitted that from the time President Hoover was elected in 1928 until 1933, he had been living with his sister in Belle Trace during which time he "piddled, ginned around, and cut firewood." *Id.* at 119. When his attorney questioned him about the apparent inconsistency between his alleged work at Biggs and his statement about his life at his sister's, he refused to recant his statement. *Id.* Based upon this admission, the Trustees determined that despite his wife's affidavit stating that he had worked at Biggs from 1931

until 1935, Baker did not work at Biggs between 1929 and 1933, during the time he said he lived at his sister's. This determination seemed to be substantiated by the fact that there was no record of a Biggs Coal Company in the Kentucky state mining records until 1933.

For the remaining period of 1933–34, the statements of Baker's co-workers, Leslie Blair and Ottis Roark, suggested that Baker had worked at Biggs for some period, but neither could conclusively state when or for how long. *See, id.* at 22 and 120. Further, in a telephone interview between Blair and the Trustees, Blair suggested that Baker and the other miners at Biggs worked under contract to the Biggs operation, had to buy their own supplies, and were paid at a rate of $1.25 per ton of coal. *Id.* at 120. Roark also indicated that the mining operation at Biggs' farm consisted of about eight men, all of whom were paid by the ton. *Id.* at 22. Taking this evidence into account, the Trustees found that Baker had worked at Biggs during 1933–34 but that he was either a self-employed contractor or a gang worker working in a non-signatory mine and therefore could not claim credit for this period under the Plan. *Id.* at 113.

### Blevins Coal Company, 1935–39

Baker originally claimed to have worked at Blevins Coal Company ("Blevins Coal") from 1937 to 1940 but during his May 11, 1987 hearing, he claimed to have worked at Blevins Coal from 1935 to 1939. *Id.* at 19. Baker testified that at the Blevins mine he "contracted (sic) the mine ... and was paid by the ton." *Id.* Baker also submitted co-worker statements from Charles Blevins, Roy Blevins, Herbert Wilson and Jack Baker, and on remand added affidavits from Roy Blevins and Mary Baker.

The Trustees conducted follow-up telephone interviews with Charles and Roy Blevins. Charles Blevins indicated that miners working on the Blevins property were not supervised and were not disciplined. Each miner was "his own boss" and was paid by the number of tons produced. *Id.* at 123. Roy Blevins stated that Baker was "hired to work as long as he

wanted to" and was paid by the ton. In addition, while Baker had to supply his own powder, "[Blevins] provided timber, nails and track timber." *Id.* at 121.

Herbert Wilson, while declaring he worked with Baker on the Blevin's property from 1935 to 1940, stated that there was not any "company" and that the Blevins brothers only trucked the coal away. *Id.* at 48. Baker's cousin, Jack Baker, also stated that the Blevins operations consisted of several mines worked by one or two men who were paid by the ton for the coal they dug. *Id.* at 23. Charles Blevins asserted that Baker had dug coal on the Blevins property for approximately five years, but could not recall when. *Id.* at 123. Jack Baker originally stated on his co-worker statement that he worked with Baker at Blevins from 1937 until 1940, *id.* at 42, but later testified that he worked with Baker from 1935 until 1940. *Id.* at 23. Mary Baker stated that she remembered that Baker was working at Blevins coal in 1938 when their son was born. *Id.* at 137. Kentucky state mining records show no listing of a Blevins Coal Company for 1935 or 1936. However, four different Blevins mines are listed for the years 1937 through 1940.

On remand, the Trustees requested any additional evidence such as tax or Social Security records or pay stubs which might help to establish his eligibility for pension credit for his work at Blevins, but Baker was unable to produce any additional records. He produced an IRS document showing that his tax records for 1937–40 had been destroyed and the Social Security office had no records of Baker's earnings prior to 1941. Baker claimed that he did not receive a Social Security card prior to 1941 and that he was always paid in cash. On the evidence presented, the Trustees found that Baker was self-employed or an unqualified gang worker from 1935 to 1936 and that he failed to establish the classified earnings required under the Plan for 1937 to 1939. *Id.* at 114.

### Littleton Coal Company, 1940

Though he did not raise this claim in his original application for benefits, at the May

11, 1987 hearing Baker asserted that he had worked at Littleton Coal in 1940. Baker was only able to produce very sparse evidence of his employment at Littleton, the sum total of which included his own and his wife's testimony and affidavits, a 1940 census report listing Baker as a miner by occupation and an affidavit by Calvin Littleton, the owner's son, stating that Calvin's father had operated a mine from 1939 to 1940 near Gregoryville in Carter County, Kentucky. As before, Baker was unable to provide any evidence of his earnings or hours worked at the Littleton mine. Based upon this evidence, the Trustees determined on remand that Baker had not sufficiently established the requisite earnings at Littleton mine to be credited with this work for pension purposes. *Id.* at 115.

In sum then, based upon its reconsideration of the prior submitted and additional evidence, the Trustees again denied Baker's claim for pension benefits. The parties then renewed their cross-motions for summary judgment before the district court and the district court granted summary judgment in favor of the Trustees. This timely appeal followed.

## II.

In *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established two standards of review for benefits determinations by fiduciaries or plan administrators under ERISA. The Court held that a denial of pension benefits should be "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956. Where the administrator or fiduciary has discretionary authority, an abuse of discretion standard applies. *Id.* at 954.

■ In the present case, the district court, quoting from the Plan, found that the Pension Plan provides that the trustees 'shall have full and final determination as to all issues concerning eligibility for benefits,' Pension Plan, Art. VI A,

and 'are authorized to promulgate rules and regulations to implement th[e] Plan, and those rules and regulations shall be binding upon all persons dealing with and Participants claiming benefits under th[e] Plan.' Pension Plan, Art. VI B(1). J. App. at 149. Citing *Boyd v. Trustees of the United Mine Workers of America Health & Retirement Funds*, 873 F.2d 57 (4th Cir.1989), the court concluded that the Plan granted the Trustees discretionary authority to determine eligibility for benefits and was therefore subject to the abuse of discretion standard of review under *Firestone.* J. App. at 149–50. We agree. Applying the abuse of discretion standard in this context requires that the Trustees' decision be upheld if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.

■ Baker's first contention is that the Trustees erred or acted in "bad faith" by finding that Baker was either self-employed or a gang worker at a non-signatory mine to deny him credit for work at the Biggs and Blevins mines between 1929 and 1940, when no such finding was made in the Trustees' first decision. The Trustees assert that the additional evidence submitted by Baker on remand as well as a number of follow-up discussions with Baker's co-workers revealed circumstances of Baker's employment that they were not aware of in the first decision. Baker asserts that the Trustees were required to reconsider only that evidence which was specifically enumerated in the magistrate's Report. However, we find that Baker's contention misconstrues the intent of the magistrate's recommendation which was to allow Baker and the Trustees to consider the specifically articulated evidence and any other evidence which might be relevant to demonstrate Baker's eligibility for benefits. As the District Court pointed out in response to this argument by Baker:

[I]t is clear that the order remanding the matter to the Trustees ordered the Trustees to consider the evidence in question but did not require them to base their decision exclusively on that evidence. There is no indication or allegation that

the evidence was not considered by the Trustees. To the contrary, there is evidence in the record that the Trustees invited plaintiff to submit any and all relevant evidence for consideration.

J. App. at 157–58. We agree that the Trustees did not err in considering all evidence before them on remand.

█ All that remains is to determine whether the Trustees' decision on remand was based on substantial evidence. Key to this analysis is a determination that the Trustees did not abuse their discretion in finding that Baker was either self-employed or a gang worker in a non-signatory mine in the relevant years.

The Plan specifically states that a miner may not get pension credit for periods of employment in which he is directly connected to the ownership, management or operation of the mine. J. App. at 60. To determine whether a miner was self-employed or working as an employee for pension purposes, the Trustees have adopted Q & A P–22. *See, id.* at 103. Q & A P–22 uses the common law "right of control" test to determine a miner's status as an independent contractor or an employee. The primary consideration is whether or not the employer "has a right to control not only the end achieved, but also the means to be used in reaching such result...." *Id.* Q & A P–22 further provides that if the employer has a right to control,

> an employer-employee relationship exists as a matter of law; otherwise, there exists an independent contractor or self-employed relationship. Such factors as the degree of supervision of a company over the performance of the person's duties, including such matters as whether the company has the right to discipline the person, whether the person is free to refuse work, and generally, whether a company exercises a significant day-to-day supervision over work performed by the person are relevant and should be taken into consideration. The application of this right-to-control test is not a mechanical one in any case, but involves

> careful balancing of all factors bearing on the relationship.

*Id.*

An exception exists to the general rule of disallowing credit for work by miners in a non-supervised context. This exception applies to persons engaged in "gangwork." "Gangwork" refers to situations in which two or more miners operate a mine as members of a cooperative or on a share-alike basis with profits and losses divided equally among the miners. *See, id.* at 124 (Q & A P–14). However, in order to qualify under this exception, the gang workers must have been signatories to a bituminous coal wage agreement then in effect. *Id.* We must assess the Trustees' findings on remand, that Baker had established no creditable work time between 1929 and 1940, against this legal background, and it is our view that the Trustees' findings were supported by substantial evidence.

For the period of 1929 to 1934, the Trustees found that Baker did not work in the coal industry from 1929 to 1933 and that he was self-employed from 1933 to 1934 at Biggs Coal. The Trustees relied on Baker's own statement that during the period from 1929 to 1933, he lived with his sister and he "piddled, ginned around, and cut firewood." *Id.* at 119. While there was conflicting evidence from Baker's co-workers and his wife that he had worked at Biggs at some point during this period, the evidence was inconclusive as to when, and the Trustees could reasonably rely on Baker's own statement that he was not employed during this period in the coal industry. Further, the Trustee's finding was supported by the fact that the Kentucky state mining records showed no evidence of a Biggs Coal until 1933.

For the period from 1933 to 1934, the Trustees relied on Baker's own statements, as well as several statements from Baker's co-workers, to conclude that Baker was either self-employed or a gang worker during this period. Baker pointed out himself that the usual employment arrangement in the Carter County mines was that they were worked by two or three men who bought their own supplies and were paid by

the ton. Leslie Blair, who allegedly worked with Baker, described the Biggs operation as one involving contract work by individuals or groups who had control over their work. He also emphasized that men were paid based upon the tons of coal they produced and had to buy their own supplies. Ottis Roark's statements also suggested that work on Biggs farm consisted of eight men working in different openings all of whom were paid by the ton. Finally, there was no evidence that any of the Biggs brothers or Baker were signatories to a bituminous coal wage agreement such that this work could be credited under the gang worker exception. In sum, then, the Trustees' finding that Baker had not met his burden of establishing six months of creditable work for any of the years between 1929 and 1934, was supported by substantial evidence.

The second relevant period of employment was 1935–1940. During this period Baker allegedly worked at Blevins Coal Company. Once again, the Trustees found that Baker was either self-employed or an unqualified gang worker. They relied on Baker's own statements that he worked the Blevins mines under contract and that he and any other men working with him split the money they were paid based upon the tons of coal they dug. Both of the Blevins brothers attested to the fact that Baker was "his own boss" and that he could "work as long as he wanted to." Roy Blevins stated that miners were not subject to supervision or discipline. The Blevin's statements were supported by the statements of Jack Baker and Herbert Wilson that the men were paid by the ton and that there was no coal company per se as the Blevins brothers were only truckers. Further, there was no evidence that the Blevins brothers or Baker were signatories to any coal wage agreement for the purposes of invoking the gang worker exception.

In addition, the Plan requires that for years after 1936, the miner must establish work credit either by demonstrating 1000 hours of work per year or by showing the required earnings per year. Unfortunately, Baker was unable to produce any records or pay stubs which could demon-

strate his eligibility for the years 1937 to 1940. While Baker's inability to produce the supporting documents was due to factors largely beyond Baker's control—both the fly-by-night nature of the coal industry during this period and the fact that the IRS had destroyed any tax records—as the magistrate noted, "[T]he Fund[s] would obviously face an avalanche of spurious claims if the [T]rustees merely took an applicant's word for his work history." J. App. at 95. The Trustees also cite several decisions, some unpublished, which suggest that an applicant's failure to prove his earnings either through Social Security records or by other means justifies denial of pension credit for the periods in question. *See, e.g. Slatton v. UMWA Health and Retirement Funds*, No. 1–82–309 slip. op. at 4 (E.D.Tenn. Dec. 7, 1982); *Persio v. Combs*, 2 Employee Benefits Cas. (BNA) 2239, 2240 (W.D.Pa.1981). Based upon these considerations, we think that the Trustees' findings with respect to the years 1935–40 are also supported by substantial evidence.

Finally, the last relevant period is the year 1940, in which Baker claimed to have worked for Littleton coal. For this year, Baker could not produce any evidence, other than his and his wife's statements (which were inconsistent), that he actually worked at Littleton. The only other relevant evidence was the 1940 census report which listed Baker as a miner for some period during 1940 and Littleton's affidavit which only establishes that a Littleton mine existed during the relevant period. As Baker produced only scant evidence suggesting his employment at Littleton coal, it was not an abuse of discretion for the Trustees to conclude that Baker had not met his burden of proving the requisite hours or earnings for pension credit during 1940.

### III.

Recognizing the difficult burden placed upon miners to prove creditable mine work during these long-distant periods, we find that the Trustees' decision was based upon principled reasoning and supported by sub-

stantial evidence. Therefore, we find the Trustees did not abuse their discretion in denying Baker benefits, and AFFIRM the district court's grant of summary judgment in favor of the Trustees.