73 F.3d 364
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 William J. SKELTON, Plaintiff-Appellant,
v.
PEABODY COAL COMPANY, Defendant-Appellee.
 No. 94-3416.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 18, 1995.*
Decided Dec. 28, 1995.
 
 Before BAUER, COFFEY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 William Skelton applied for health care benefits under a multi-employer welfare fund for coal miners represented by the United Mine Workers. Skelton wanted the Fund to pay for the medical care of an infant he planned to adopt. The Trustees of the Fund agreed, but only in part. The Trustees agreed to pay for care beginning July 12, 1991, when Skelton commenced formal adoption proceedings for the baby; care between the baby's birth on July 5 and the filing of the adoption papers was the family's responsibility, the Trustees concluded.
 
 
 2
 Skelton's suit under ERISA named the Fund and the insurer administering the plan. The district court's opinion names those two entities as the defendants. For reasons that are not clear in the appellate record, the Fund was dismissed as a party, and Peabody Coal Company, Skelton's employer, was substituted for the insurer. Peabody apparently concedes that, although the Trustees made the decision, it is responsible for the payment Skelton seeks. We therefore proceed to decision under the incongruous caption this case carries.
 
 
 3
 The Plan provides for benefits to a participant's unmarried, dependent children. The Trustees concluded that a baby born to a person not covered by the Plan is not a "child" of a participant until the adoption process has begun. Skelton says that this is too stingy--that the definition of "child" should inquire when the infant entered the participant's household, or when the participant expressed an intention to adopt the baby. The baby's natural mother consented to the adoption on April 17, before the baby's birth; the father consented on April 23; and the Skelton family took physical custody immediately after birth. That made the baby their "child" in everything but the technical legal sense, they submit. Responsible administrators of the Plan might have concluded that guardianship or foster care is enough (the Skeltons became legally responsible for the child's welfare when they took custody); but the Trustees also could have said that the line is not crossed until the adoption has been completed (in this case, July 22, 1992). Technical legal senses--which is to say, bright line tests--may be vital to the administration of a nationwide enterprise that includes hundreds of employers and many thousands of participants. Instead the Trustees drew the line in between, as had been done for years under this Plan. A narrative brochure, in question-and-answer form, informed participants:
 
 
 4
 Stepchildren, illegitimate children and adopted children are covered for health benefits. Coverage for adopted children begins the date they begin living in the participant's household, provided the adoption process has begun.
 
 
 5
 The Trustees added to that description in this case only by observing that the adoption process "begins" when the potential adoptive parents file the necessary papers with the state; it does not begin when they express an intent to adopt the child, or when they obtain the natural mother's consent.
 
 
 6
 The district court held that the Trustees possess discretion to interpret the Plan, that deferential review is therefore appropriate, and that the Trustees did not act arbitrarily or capriciously. The court therefore entered judgment in favor of the Fund. Skelton argues for de novo review under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), on the ground that the Plan does not contain an express grant of interpretive powers. Instead it contains a provision making the Trustees' decision "final," which Skelton understands as an attempt to avoid the rules established by ERISA (including judicial review) rather than as a grant of interpretive discretion.
 
 
 7
 The district court's conclusion that the Trustees have interpretive discretion is consonant with the holdings of several other circuits. See Hale v. Trustees of the United Mine Workers Health and Retirement Funds, 23 F.2d 899, 901 (4th Cir.1994); Baker v. United Mine Workers Health and Retirement Funds, 929 F.2d 1140, 1144 (6th Cir.1991). We need not decide whether to follow these decisions (though we are hardly anxious to create a conflict among the circuits on such a narrow question), because the standard of review does not matter in the end. Even if we were to review without deference, we would agree with the Trustees rather than with Skelton. A desire, even one firmly expressed, to adopt a baby does not make that baby one's "child." Some legal act is necessary. The Trustees decided that the filing of adoption papers is enough. The longstanding interpretation on which the Trustees relied suggest that this is the view shared by the settlors of this trust (the union and the employers). The Trustees did not make a surprising decision; it is Skelton who asks for a departure from the prior understandings. These circumstances lead us to conclude that the judgment of the district court must be affirmed.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a), Circuit Rule 34(f). No such statement has been filed, so the appeal is submitted for decision on the briefs and record