NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0855n.06
Filed: December 14, 2007

No. 07-1346

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

GREGORY LEFFEW,

    Plaintiff-Appellant,

       v.

FORD MOTOR COMPANY, UNICARE LIFE &
HEALTH INSURANCE COMPANY, FORD
NATIONAL RETIREMENT PLAN,

    Defendants-Appellees.

On Appeal from the United
States District Court for the
Eastern District of Michigan
at Detroit

_____/

**Before:** **GUY, MOORE, and GILMAN**, **Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Plaintiff Gregory Leffew appeals from the

district court's entry of judgment in favor of defendants Ford Motor Company, Unicare Life

& Health Insurance Company, and Ford National Retirement Plan in this action challenging

the denial of his claims for both extended disability benefits and disability retirement benefits

under separate employee benefit plans governed by the Employee Retirement Income

Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B). Unicare, as a claims processor

for Ford, terminated plaintiff's extended disability benefits in December 2002 without

sending ERISA-compliant notice, and denied a claim for extended disability benefits after plaintiff was reinstated to employment in May 2003. Ford denied plaintiff's application for disability retirement benefits in April 2005, upon the determination that he was totally but not permanently disabled. After review of the record and the arguments presented on appeal, we affirm with respect to the extended disability claims but reverse and remand with respect to the claim for disability retirement benefits.

## I.

Gregory Leffew was hired to work as a machine operator for Ford in March 1990. Plaintiff was eligible to participate in the UAW-Ford Life and Disability Plan, which provides accident and sickness benefits for short-term disability and extended disability benefits for long-term disability. A separate Retirement Plan provides disability retirement for eligible employees who become totally and permanently disabled. Both plans provide that Ford is the plan sponsor and administrator, although claims for extended disability benefits are initially submitted to Unicare for review.

### A.      Extended Disability Benefits

In August 2001, at age 44, plaintiff made a claim for accident and sickness benefits alleging disability due to an old neck injury, chest pain, and a testicular problem. The claim was approved, and plaintiff exhausted the 52-week maximum for accident and sickness benefits in September 2002. Plaintiff immediately began getting extended disability benefits that continued until plaintiff's treating physicians released him to return to work in December

2002.[1]

Specifically, Unicare was advised by Dr. Judy Macy, a physician treating plaintiff for cervical radiculopathy, that plaintiff could return to work as of December 9, 2002. By all accounts, plaintiff did not return to work and his employment was terminated. Ford would later inform Unicare that plaintiff was not discharged but had been terminated as a "10-day quit." When plaintiff contacted Unicare in January 2003, he explained that he had not returned to work and had been terminated from employment with Ford. Unicare's records include a letter drafted on January 23, 2003, but admittedly never sent, stating that plaintiff did not meet the requirements for extended disability benefits. Further entries reflect that plaintiff was in regular contact with Unicare and was advised by telephone that his benefits were terminated effective December 15, 2002. At that time, Unicare also invited plaintiff to provide updated medical information.

Plaintiff then had his treating chiropractor, Dr. Gary Conant, contact Unicare on his behalf in early February 2003. At that time, Dr. Conant confirmed that plaintiff had been under treatment and unable to work in November 2002, but also reported that plaintiff had been released to return to work as of December 2, 2002. No further medical information was provided to Unicare, and no appeal was taken from the termination of his extended disability benefits.

On May 19, 2003, plaintiff was reinstated to employment with Ford but worked for only fifteen minutes. Plaintiff promptly filed a new claim with Unicare seeking disability

---

[1]Unicare's administrative record also includes a copy of a denial of social security disability benefits dated June 13, 2002.

benefits due to neck pain and depression. Dr. Conant advised Unicare that plaintiff was unable to work from May 19 through May 23, 2003, and Dr. Macy reported that plaintiff could not return to work between May 27 and June 30, 2003. Dr. Macy also indicated that plaintiff had not been seen since being released to work in December 2002. Unicare notified plaintiff in a letter dated June 9, 2003, that this claim was denied because his coverage had ended with the termination of his employment in December 2002, and he had not made an effective return to work upon reinstatement because he had not worked for at least one hour on or after May 19, 2003. The letter also advised plaintiff of his right to appeal, but no appeal was taken.

## B. Disability Retirement

On June 2, 2003, plaintiff contacted Ford about applying for disability retirement benefits and mentioned that he had a pending application for social security disability benefits. Ford's records note that plaintiff was asked to send a copy of the Social Security Administration (SSA) determination once it was received. After the retirement application was finally completed in December 2003, Ford sent plaintiff for an independent medical examination (IME). Before the IME, plaintiff apparently obtained a medical report from Dr. Macy documenting plaintiff's neck and back pain, referencing plaintiff's psychiatric consultations, and concluding that plaintiff was totally and permanently disabled. Although Dr. Macy's February 10, 2004 report is not in the administrative record, this much was repeated in the IME's report prepared by Dr. Maurice Castle.[2]

---

[2]This appears to be the first suggestion that plaintiff had a disabling psychiatric condition.

Dr. Castle, an orthopedic surgeon, examined plaintiff on March 1, 2004, and concluded that plaintiff's physical limitations did not render him totally and permanently disabled from an orthopedic standpoint. In closing, Dr. Castle added that a psychiatrist would have to be consulted for an opinion regarding plaintiff's psychological problems. Without consulting a psychiatrist, Ford denied the application for disability retirement benefits. Ford sent notice to that effect in a letter dated April 30, 2004, and plaintiff appealed.

Ford requested another IME, this time from Dr. Edward Dorsey, a psychiatrist, who saw plaintiff on August 5, 2004. Dr. Dorsey's report references a medical report from Dr. Nihal Saran, plaintiff's treating psychiatrist, and relates not only that Dr. Saran's diagnosis was "bipolar affective disorder, depressed type, moderate to severe," but also that Dr. Saran viewed plaintiff's prognosis as poor because the condition had been untreated and undertreated for so long. After his own evaluation, Dr. Dorsey observed that plaintiff did not appear mentally ill and theorized that plaintiff's inability to return to work may have been attributed to "rapid maturation of a personality" suppressed by heavy substance abuse that stopped completely in 1986 (more than 15 years earlier).

Dr. Dorsey's diagnosis included dysthymia with hypersomnia, and plaintiff was found to have a Global Assessment Functioning (GAF) score of 70. Dr. Dorsey concluded that plaintiff was not totally and permanently disabled, while agreeing that plaintiff was "unlikely to return to industrial labor of the type that he performed for . . . Ford Motor Company." Dr. Dorsey, it seems, believed plaintiff's inability to return to work was not due to the onset of

mental illness but rather "the onset of rapid maturation of a personality perhaps more suited to a more academic, linguistic, communicative endeavor."

Plaintiff filed another application for disability retirement benefits on October 13, 2004. Ford required another IME, which was performed by Dr. Saul Forman on March 15, 2005. Dr. Forman's report related plaintiff's history, including the report of suicidal feelings when plaintiff lost his son to child protective services because the house did not have a stove or refrigerator.[3] Dr. Forman diagnosed plaintiff as having mixed bipolar disorder with some antisocial traits, and determined that plaintiff's GAF score was 45 to 55. This score is associated with serious symptoms or serious impairment of social, occupational, or educational functioning. With plaintiff's permission, Dr. Forman contacted Dr. Saran to discuss plaintiff's diagnosis and prognosis. Dr. Saran reportedly advised that plaintiff had just started treatment with antipsychotic and antidepressant medication to which many patients respond. With that, Dr. Forman concluded that plaintiff was totally but temporarily disabled and recommended reevaluation in six months to determine whether the disability would be total and permanent for the rest of plaintiff's life.

In apparent reliance on this opinion, the plant physician indicated on a placement determination form dated April 1, 2005, that plaintiff was temporarily disabled with reevaluation to be done six months from Dr. Forman's report. Ford denied plaintiff's

---

[3]We recognize that the court records plaintiff submitted to the district court concerning the intervention of child protective services were stricken because they were not part of the administrative record.

application for disability retirement benefits in a letter dated April 22, 2005.[4]

## C.    District Court Proceedings

In May 2006, plaintiff commenced this action for benefits under ERISA. 29 U.S.C. § 1132(a)(1)(B). The district court, referencing this court's pronouncements concerning ERISA proceedings in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 619 (6th Cir. 1998), issued a case management order under Fed. R. Civ. P. 16 requiring, among other things, that each party file a pleading indicating whether the complaint is viewed as asserting a procedural challenge and, if so, the precise nature of the procedural challenge. After statements of "no procedural challenge" were filed, the matter proceeded on cross-motions for judgment on the administrative record. The district court entered judgment in favor of defendants for the reasons set forth in its opinion and order of January 31, 2007. This appeal followed.

## II.

We review the district court's decision granting judgment on the administrative record in an action to recover ERISA benefits *de novo*, and apply the same legal standards as the district court. *Wilkins*, 150 F.3d at 613. When the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the administrator's decision is reviewed under the arbitrary and capricious standard. *Kalish v. Liberty Mut./Liberty Life Assur. Co.*, 419 F.3d 501, 506 (6th Cir. 2005).

---

[4]The plant physician contacted Ford in July 2005, asking about the six-month reevaluation recommended by the IME. Ford explained, according to its record, that because plaintiff was found ineligible no further evaluation would be done. Also, the employee could reapply after six months and any new medical exam would be done for that application.

In this case, the parties filed a joint statement concerning the standard of review as required by the district court's case management order. In it, the parties stipulated that the denial of both extended disability benefits and disability retirement benefits should be reviewed under the arbitrary and capricious standard. Under this deferential review, the administrator's decision will not be deemed arbitrary and capricious "so long as 'it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome.'" *Id*. (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).

## A.    Extended Disability Benefits

An employee is eligible for extended disability benefits if (1) he is covered for accident and sickness benefits, (2) his disability continues beyond the period of eligibility for accident and sickness benefits, and (3) he is totally disabled. Total disability is defined to mean the employee is not employed and is "prevented by bodily injury or disease from engaging in any regular occupation or employment with the Company at the plant or plants where [he has] seniority." As outlined earlier, plaintiff was receiving extended disability benefits when his treating physicians released him to return to work in December 2002. Without arguing that it was arbitrary and capricious to conclude that he was no longer totally disabled as defined by the plan, plaintiff relies on Unicare's admitted failure to send ERISA-compliant written notice of the termination of benefits to assert a procedural violation of ERISA. The district court rejected this claim on the alternative grounds of waiver and substantial compliance.

As noted earlier, the district court's case management order directed the parties to file

a pleading entitled either "Statement of No Procedural Challenge," or "Statement of Procedural Challenge." The order further directed that the statement "must indicate whether the party views the complaint as asserting a procedural challenge to the administrator's decision . . . and must indicate the precise nature of the procedural challenge." In the event of a procedural challenge, the other dates set by the case management order would be adjourned and a scheduling conference would be held to consider the need for limited discovery and to set new dates.

In response to that order, plaintiff filed a pleading entitled "Statement of No Procedural Challenge," which stated in the body that the "Complaint challenges the decision and the decision making of the various benefit entities named as defendants, but Plaintiff does not request discovery as set forth in the suggested guidelines of the concurring opinion in *Wilkins*[.]" Plaintiff argues on appeal that his reference to "decision making" should be equated to this court's description of a procedural claim as a problem "'with the integrity of [the plan's] decision-making process.'" *Elliott v. Metro. Life Ins. Co.*, 473 F.3d 613, 622 (6th Cir. 2006) (alteration in original and citation omitted). The issue in *Elliott*, however, was not the adequacy of pleadings but the appropriateness of remand when the problem is with the process as opposed to the merits of the denial of benefits. Whatever ambiguity plaintiff hoped to inject in his "Statement of No Procedural Challenge," the district court did not err in finding that it did not assert or preserve a procedural claim. Nor did it even arguably comply with the directive to indicate the precise nature of any such procedural claim.

Taking a new tack on appeal, plaintiff asserts that the case management order improperly imposed a heightened pleading standard for a procedural claim that is inconsistent with notice pleading and not required by *Wilkins*. This argument is misplaced. The district court did not dismiss for failure to plead with specificity, but rather required under the authority of Fed. R. Civ. P. 16 that the parties clarify what claims were being pursued. Rule 16 gives district courts discretion to consider and take action with respect to various matters, including "the formulation and simplification of issues," "the avoidance of unnecessary proof," and "the control and scheduling of discovery." FED. R. CIV. P. 16(c). The issuance of an order under Rule 16(b) "is designed to ensure that at some point both the parties and the pleadings will be fixed," subject to modification upon a showing of good cause and with leave of the court. *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (internal quotation marks omitted).[5]

We agree with the district court that plaintiff's "Statement of No Procedural Challenge" constituted a waiver of any claim that plaintiff's extended disability benefits were terminated in violation of the procedural requirements of 29 U.S.C. § 1133. Consequently, we do not reach the question of whether the procedures employed by Unicare substantially complied with the requirements of § 1133.

Lastly, plaintiff faults the district court for failing to consider the May 2003

---

[5]Plaintiff adds on appeal that full disclosure of the administrative record was not made until just before the motion for judgment on the record was filed. Yet, despite this assertion, plaintiff does not argue that he was unaware that a denial letter had not been sent until after the full administrative record was disclosed. In the district court, moreover, plaintiff gave no indication that he was unable to determine the contours of his procedural claims, did not request an extension of time to file the statement, and did not seek to amend the statement to assert a procedural claim.

application for benefits to be a continuation of the prior claim for benefits that was terminated in December 2002. Although not entirely clear, plaintiff seems to be arguing that the failure to send written notice of the termination of benefits in December 2002 left the claim "open" such that the new claim in May 2003 should be considered an appeal from the earlier decision terminating his benefits. Plaintiff offers no authority to support this proposed treatment, and the claim itself plainly asserted a new period of disability commencing on May 19, 2003.

The written denial letter indicated that this new claim was denied because the termination of employment ended coverage under the plan in December 2002, and coverage was not in force in May 2003 "due to no hour worked on or after [his] reinstatement of May 19, 2003." Although plaintiff argues that there was no clear record of an actual termination, the *only* evidence in the record is that plaintiff reported being terminated and Ford confirmed that he was terminated as a "10-day quit." The plan provides that: "If your employment is terminated because of a quit or discharge, your coverage terminates as of the date you quit or are discharged. If, however, you are discharged and have a grievance pending to protest your loss of seniority, coverage terminates at the end of the month in which you were discharged." Although the plan also provides for successive periods of disability, plaintiff has not disputed that he did not make a qualifying return to work.

For the reasons stated, we affirm the district court's entry of judgment in favor of defendants on claims asserted with respect to the termination and denial of extended disability benefits.

**B.      Disability Retirement Benefits**

The Retirement Plan included provision for disability retirement for employees with seniority, ten years of creditable service, and at least five months of total and permanent disability.[6]  The Plan defines total and permanent disability as follows:

You are considered totally and permanently disabled under the Plan if the Retirement Board determines that:

• You have an injury or disease that prevents you from engaging in any regular occupation or employment with the Company at the plant or plants where you have seniority

• You are not engaged in any regular occupation or employment for pay or profit (unless for purposes of rehabilitation)

• Your disability is considered to be permanent and continuous for your lifetime[.]

Ford's final denial in April 2005 advised that the medical evidence did not show plaintiff was totally and permanently disabled since his "disability is not expected to be permanent."

Reviewing this denial under the arbitrary and capricious standard, we will uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Baker v. United Mine Workers of Am. Health and Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991).  When, as Ford acknowledges is the case here, the employer operates the plan as both the administrator determining which claims are covered and the sponsor responsible for paying those claims, there is a readily apparent conflict of interest.  This inherent conflict does not alter the standard of review, but must be

---

[6]Even after approval, disability retirement benefits end under the plan if an employee reaches age 65, returns to work, or no longer meets the requirements for total and permanent disability.

weighed as a factor in determining whether the decision was arbitrary and capricious. *Kalish*, 419 F.3d at 506 (citing *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). This deferential review is not a "rubber stamp" of the administrator's decision, but requires that we review the quality and quantity of the medical evidence and the opinions on both sides of the issue. *Moon v. UNUM Provident Corp.*, 405 F.3d 373, 379 (6th Cir. 2005).

### 1.    SSA Award

At the heart of plaintiff's appeal is his contention that the denial of disability retirement benefits was arbitrary and capricious because it did not account for the fact that he was awarded social security disability benefits—a fact that is not disputed. As the district court emphasized, "the SSA's disability determination does not, standing alone, require the conclusion that [the] denial of benefits was arbitrary and capricious." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 295 (6th Cir. 2005). Entitlement to social security disability benefits is measured by a uniform set of federal standards, while a claim for benefits under an ERISA plan often turns on the interpretation of plan terms that differ from the criteria used by the SSA. *Whitaker v. Hartford Life and Accident Ins. Co.*, 404 F.3d 947, 949 (6th Cir. 2005). Nonetheless, "the SSA determination, though certainly not binding, is far from meaningless." *Calvert*, 409 F.3d at 294.

In particular, when a plan administrator requires a claimant to pursue social security disability to reduce the amount of benefits due under the plan, the SSA's determination of disability should not be ignored in determining disability under the plan. *Id*. at 294-95; *Whitaker*, 404 F.3d at 949; *Glenn v. MetLife*, 461 F.3d 660, 667-69 (6th Cir. 2006), *petition*

*for cert. filed*, 75 U.S.L.W. 3368 (U.S. Jan. 3, 2007) (No. 06-923). As such, failure to consider an SSA award is relevant to the question of whether the plan's denial of disability retirement benefits was arbitrary and capricious. *Glenn*, 461 F.3d at 667. It is not necessary, however, that the plan administrator expressly distinguish a favorable SSA determination in denying disability benefits under the plan. *Whitaker*, 404 F.3d at 949.

In this case, it is clear that the plan required a claimant to apply for social security disability benefits in order to reduce the amount of the benefits payable under the plan.[7] Nonetheless, neither the SSA's award nor any of the SSA's records were ever made part of the administrative record on which the determination was made that plaintiff was totally but temporarily disabled. The award of social security disability benefits requires a showing that a plaintiff is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The SSA award was particularly relevant with respect to the critical issue of whether plaintiff's disability was temporary or permanent and continuous. Indeed, although Dr. Forman was apparently not apprised of it, plaintiff had already been receiving social security disability benefits for more than six months at the time of Dr. Forman's evaluation in March 2005.

On the same day that plaintiff saw Dr. Dorsey, the Retirement Board was informed that plaintiff was receiving social security disability benefits. The administrative record

---

[7]The Retirement Plan, unlike the Accident and Sickness Plan, did not provide for direct setoff of social security disability benefits. Instead, an additional "temporary" benefit is paid if the employee applied for and was denied social security disability benefits and continues until eligibility is established for social security disability benefits.

stated: "We have requested a copy of the award letter and still have not yet received this information." A later entry on October 12, 2004, noted that although plaintiff was receiving social security disability benefits, the file still showed a social security disability denial. Another request was made of plaintiff in January 2005. The district court faulted plaintiff for failing to provide a copy of the SSA's award letter despite Ford's requests, but overlooked or gave no weight to evidence that plaintiff had provided written authorization for Unicare to obtain records from the SSA and for Unicare to provide its records to Ford. In fact, Ford obtained Unicare's records and noted that the SSA's award letter was not among them. It is hard to imagine that Ford would have been satisfied with that omission if plaintiff had been approved for disability retirement benefits. Ford argues, in a seemingly contradictory way, both that plaintiff cannot prove that the SSA's award was *not* considered, and that the SSA's award was not considered because it was not part of the administrative record. Tellingly, Ford does not state that it considered the SSA's determination. Evidence that the SSA's award was not considered by Ford or the doctors performing the IMEs is relevant to the question of whether the denial of benefits was arbitrary and capricious.

##### 2.      Quality and Quantity of Evidence

Turning to the medical evidence, we cannot overlook the fact that the administrative record is devoid of any reports or opinions from plaintiff's treating physicians that would be favorable to his claim. Although the opinions of treating physicians are not entitled to special deference in the ERISA context, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833-34 (2003), a plan administrator "may not arbitrarily refuse to credit a claimant's

reliable evidence, including the opinions of a treating physician." *Id*. at 834; *see also Calvert*, 409 F.3d at 295-96. In fact, we only know of their conclusions to the extent that they are referenced in the IME reports. It is in that way that the administrative record reflects that Dr. Macy found plaintiff totally and permanently disabled in February 2004, and that Dr. Saran diagnosed plaintiff's bipolar disorder and concluded that he was totally and permanently disabled in July 2004. As noted above, however, none of the IME reports referenced the award of social security disability benefits.

On appeal, Ford emphasizes that three IMEs performed over a one-year period each found that plaintiff was not totally and permanently disabled. This is, at best, misleading. The first IME by Dr. Castle in March 2004 found that plaintiff was not physically disabled, but specifically advised Ford that an opinion concerning plaintiff's psychiatric condition would require consultation with a psychiatrist. Ford denied benefits without requesting an independent psychiatric evaluation and without giving any reason for rejecting Dr. Macy's finding of total and permanent disability. Only after plaintiff appealed was an independent psychiatric evaluation performed by Dr. Dorsey in August 2004.

Dr. Dorsey rejected the diagnosis of mental illness, but offered no explanation for disagreeing with Dr. Saran's diagnosis of disabling bipolar disorder. Dr. Dorsey indicated only "[b]y way of general discussion," that heavy substance abusers can fit into practically any physical occupation, but that after abstinence "takes hold" maturation proceeds at a steeper pace. Dr. Dorsey went on to attribute plaintiff's fatigue, negative effects, and "perhaps significantly somatizing factors in the multifocal pain as evidence of the steepness

of the ascent of this theorized personality development," even though plaintiff's abstinence started more than fifteen years earlier and before plaintiff was even hired by Ford.

The third and last IME by Dr. Forman in March 2005 concurred in the diagnosis of bipolar disorder, opined that plaintiff was totally but temporarily disabled from any regular employment, and recommended that plaintiff be reevaluated in six months to determine whether the disability would be total and permanent throughout the remainder of his life. The rationale for finding plaintiff totally but temporarily disabled, reportedly elicited in a conversation with Dr. Saran, was that plaintiff had recently started a trial of antipsychotic and antidepressant medication to which many patients respond.[8] Ford apparently relied on Dr. Forman's opinion in determining that plaintiff was not totally and permanently disabled.

Plaintiff contends that Ford's reliance on Dr. Forman's opinion was arbitrary and capricious because Ford knew it had not taken into account evidence that plaintiff had experienced a substantial decline in functioning over the preceding six months. Ford responds that even with the lower GAF score of 45 to 55, Dr. Forman nonetheless opined that plaintiff was not totally and permanently disabled. Actually, Dr. Forman found plaintiff was totally but temporarily disabled. Since there is no indication that Dr. Forman was aware that the IME performed six months earlier had reflected a GAF score of 70, Dr. Forman could not have evaluated the significance of the deterioration represented by the substantial decline in plaintiff's GAF score in assessing whether the disability should be considered permanent and

---

[8]Dr. Forman's report quoted Dr. Saran as saying: "I see no reason down the line why he can't return to work . . . he just started medication . . . he has not had mental health care in the past." (Omissions in original.)

continuous.

Taken together, the administrative record reflects (1) the absence of any opinions from plaintiff's treating physicians, (2) no indication that Ford considered the SSA's determination in evaluating the permanence of plaintiff's disability, and (3) Ford's reliance on Dr. Forman's opinion that plaintiff was temporarily disabled without advising Dr. Forman of the earlier GAF score or the SSA's award. On this record, we find that the denial of disability retirement benefits by Ford, a conflicted administrator, was arbitrary and capricious. Unable to discern a reasoned basis for the denial or substantial evidence to support it, we reverse judgment on this claim.

### III.

For the reasons set forth above, the district court's judgment is **AFFIRMED** with respect to the claims for extended disability benefits, but **REVERSED** with respect to the claim for retirement disability benefits and **REMANDED** to the district court with instructions to remand the claim for disability retirement benefits to Ford for a full and fair review consistent with this opinion.