NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0614n.06

No. 12-1287

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jun 28, 2013*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| DARLA KAY WHITE, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Plaintiff-Appellant, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| v. | ) | |
| | ) | |
| STANDARD INSURANCE COMPANY; | ) | |
| SECURITY FIRST ASSOCIATED | ) | |
| AGENCY, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before:  COOK and WHITE, Circuit Judges; and SHARP, District Judge.*

**HELENE N. WHITE, Circuit Judge.**  Darla White appeals the dismissal of her retaliation and discrimination claims brought against her employer Defendant Security First Associated Agency (SFI) under the Americans With Disabilities Act (ADA), 42 U.S.C. § 12131, and the grant of judgment for Defendant Standard Insurance Company (Standard) on the administrative record on her claim brought under the Employee Retirement and Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B).  We AFFIRM.

---

*The Honorable Kevin H. Sharp, United States District Judge for the Middle District of Tennessee, sitting by designation.

1

# I.

White, a Certified Insurance Service Representative, was employed by SFI as a full-time customer service agent from 2003 to February 2008. As an SFI employee, White was insured under group short- and long-term disability (LTD) policies that Defendant Standard procured from SFI. The LTD policy at issue is an employee welfare benefit plan governed by ERISA.

Following a non-work-related back injury in September 2007, White stopped working due to lower back pain that her physician, Dr. Beasecker, diagnosed as sciatica. Standard paid White short-term disability (STD) benefits through December 24, 2007, the maximum duration for STD benefits. In mid-December 2007, White returned to work, part time, with medical restrictions that she work not more than four hours a day and limit her bending and lifting. White worked part time for six to eight weeks. In the meantime, White's STD benefits expired on December 24, 2007, and converted to LTD benefits.

Standard approved White's LTD claim through February 11, 2008, in accordance with a letter from Dr. Beasecker opining that White would be able to return to full-time work by January 28, 2008. Standard's January 29, 2008 determination letter informed White that her disability claim was approved for payment only through February 11, 2008.

From mid-January on, White had difficulty working even four hours a day due to ongoing pain. She either did not work or left early six days in January; in February, she left early on the 6th and called in sick on the 7th, due to a back spasm. The following day, SFI

2

terminated White's employment but advised that her position would remain open until the end of March 2008 should she be able to return to full-time work. White did not request to return to full-time work.

White unsuccessfully appealed Standard's decision to close her LTD claim three times, in June 2008, February 2009, and December 2009. White filed a charge with the EEOC and then filed the instant suit, asserting that SFI discriminated and retaliated against her in violation of the ADA, and that Standard improperly denied her continued LTD benefits after February 11, 2008. The district court's opinion fully sets forth additional background and the case's procedural history. *See White v. Standard Ins. Co.*, 895 F. Supp. 2d 817, 821–26 (E.D. Mich. 2012).

## II. ADA Discrimination Claim

Title I of the ADA provided at pertinent times[1] that a covered employer "shall [not] discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff establishes a *prima facie* case of discrimination through indirect evidence by showing 1) that she is disabled, 2) that she is otherwise qualified for the position, with or without reasonable accommodation, 3) that she suffered an adverse employment action, 4) that the employer knew or had reason to know of

---

[1]SFI terminated White's employment in February 2008, before the ADA Amendments Act of 2008 took effect on January 1, 2009, Pub. L. No. 110-325, 122 Stat. 3553. This court has held that the 2008 amendments are not retroactive. *See Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012).

her disability, and 5) that the position remained open while the employer sought other applicants or the disabled individual was replaced. *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007), *rev'd in part on other grounds*, *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–17, 321 (6th Cir. 2012) (en banc) (holding that the ADA prohibits discrimination that is a "but-for" cause of the employer's adverse action, overruling *Monette v. Elec. Sys. Corp.*, 90 F.3d 1173, 1177–78 (6th Cir. 1996), which held that an ADA plaintiff must establish that his employer's adverse action was taken "solely" on the basis of his disability).

White contends that the district court erred in determining that there was no issue of material fact whether she was a qualified individual with a disability, the second *prima facie* element. *Whitfield v. Tennessee*, 639 F.3d 253, 258–59 (6th Cir. 2011). A "qualified individual" is an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions" of her position. 42 U.S.C. § 12111(8). A job function is essential if its removal would "fundamentally alter" the position. *Kiphart v. Saturn Corp.*, 251 F.3d 573, 584 (6th Cir. 2001) (quoting 29 C.F.R. § 1630.2(n) app. at 356).

SFI established that full-time work was an essential function of White's CSA position. *See Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007) ("The employer will bear the burden of proving that a challenged job criterion is essential."). SFI presented uncontroverted evidence that it had never employed a CSA on a part-time basis, its written CSA job description stated that the position is full-time, and White acknowledged

4

on deposition that she was unable to complete the requirements of the position in a four-hour day. White also acknowledged that other employees were assigned on a rotating basis to cover her accounts for the remaining four hours, resulting in those employees working overtime to meet the needs of her assigned accounts.

Further, White did not establish that she requested a reasonable accommodation. *See id.* at 870 ("Generally, an ADA plaintiff bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable.") (citation and internal quotation marks omitted); *see also Smith v. Henderson*, 376 F.3d 529, 535 (6th Cir. 2004) ("Smith was entitled to a reasonable accommodation . . . so long as she was a 'qualified' individual with a disability, meaning that the modifications and adjustments she sought would have enabled her to perform the 'essential functions' of [her] job."). White's Reply Brief argues that she requested "additional part time opportunity" in February 2008 when SFI terminated her employment. Reply Br. at 6. Even if White had preserved this argument below it would fail because a request to *continue* working part-time when she had been unable to perform the essential functions of the CSA position while working part-time for weeks was not a request for a *reasonable* accommodation. SFI was not required to create a new part-time position where none previously existed, *Kleiber*, 458 F.3d at 869, and, even working part-time White could not have performed the essential functions of the job, *Lauby v. Swanson*, 124 F.3d 198, 1997 WL 561334, at *4 (6th Cir. 1997) (table disposition); *Monette*, 90 F.3d at 1182 n.8. White thus failed to present sufficient evidence to establish the second *prima facie* element of her ADA discrimination claim—that she was an individual

5

with a disability "who, with or without reasonable accommodation, can perform the essential functions" of her position. 42 U.S.C. § 12111(8). Thus, summary judgment was proper.

### III. ADA Retaliation Claim

To establish a *prima facie* retaliation case under the ADA a plaintiff must show that she engaged in a protected activity and suffered an adverse employment action, and that there was a causal link between the protected activity and the adverse employment action. *Bryson v. Regis Corp.*, 498 F.3d 561, 577 (6th Cir. 2007). If a plaintiff presents indirect evidence to establish her *prima facie* case, as here, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies. *Bryson*, 498 F.3d at 577. That is, the defendant must produce evidence of a legitimate, non-discriminatory reason for its adverse action, after which the plaintiff must show by a preponderance of the evidence that the proffered legitimate reason was not the true reason for the adverse employment action, but merely a pretext for retaliation. *Id.*

White contends that she sufficiently established that she engaged in protected activity before SFI terminated her employment to withstand summary judgment. SFI responds that there is no record of White having complained about disability discrimination before her February 8, 2008 termination and that, even if there were, White cannot show that SFI's reasons for terminating her employment were pretextual. White asserts that her inquiries of SFI management in late 2007 regarding the nature of her health insurance benefits and charges to her for these benefits constituted protected activity. White cited no authority

6

below to support that such inquiries may constitute protected activity. *See United States v. Bean*, 214 F. App'x 568, 571 (6th Cir. 2007) (citing *Figueroa-Rubio v. INS*, 108 F.3d 110, 112 (6th Cir. 1997)). Only in her Reply Brief does White cite authority, specifically, *Nguyen v. City of Cleveland*, 229 F.3d 559 (6th Cir. 2000). Unlike the instant case, the plaintiff in *Nguyen* filed a grievance and EEOC charges while employed. *Id.* at 565. *Nguyen* neither addresses nor supports that an employee's inquiries regarding health insurance benefits constitutes protected activity.

Additionally, White argues in her Reply Brief that her attendance while working part-time cannot be deemed the conclusive reason SFI abruptly terminated her employment because she had approximately 190 hours of vacation/personal time left. Reply Br. at 3. Even if preserved, this argument goes to pretext—an inquiry courts reach only if a plaintiff has established a *prima facie* case. *See Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999). Here, White failed to establish that she engaged in protected activity and thus did not establish a *prima facie* case of retaliation. The district court's grant of summary judgment was thus proper.

## IV. <u>ERISA CLAIM</u>

Where, as here, an ERISA plan grants the administrator discretionary authority to determine benefit eligibility, we review benefit denials under a deferential arbitrary-and-capricious standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009).

"[W]e will uphold the administrator's decision 'if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence.'" *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006) (quoting *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991)), *aff'd*, 554 U.S. 105 (2008). Arbitrary and capricious review "is the least demanding form of judicial review of administrative action." *Judge v. Metro. Life Ins. Co.*, 710 F.3d 651, 658 (6th Cir. 2013) (quoting *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)).

When applying arbitrary and capricious review, this court considers potential conflicts of interest, including when, as here, the plan administrator is also the payer of benefits. *Glenn*, 554 U.S. at 112. In the instant case, the district court weighed Standard's conflict of interest as a factor and properly determined that the record was devoid of evidence that any such conflict improperly influenced Standard's final decision to deny White continued LTD benefits. *See Smith v. Continental Cas. Co.*, 450 F.3d 253, 260 (6th Cir. 2006); *see also DeLisle v. Sun Life Assur. Co. of Canada*, 558 F.3d 440, 445 (6th Cir. 2009) (mere conclusory allegations of bias are not enough).

**A.**

White concedes that the LTD policy grants Standard discretionary authority, but argues that Standard may not assert its discretionary authority because the state of Michigan prohibits discretionary clauses in insurance policies under Mich. Admin. Code R. 500.2202.[2]

---

[2]R. 500.2202 provides:
(a) A discretionary clause unreasonably reduces the risk purported to be

8

This argument fails. Regulation 500.2202 became effective June 1, 2007. By its own terms it does not apply to the LTD policy at issue, Number 627108-A, which was amended on June 1, 1999, but not on or after July 1, 2007.[3] *See Morrison v. Unum Life Ins. Co. of Am.*, 730 F. Supp. 2d 699, 706 (E.D. Mich. 2010) ("the intended purpose of the Regulation was to invalidate discretionary clauses in contracts which existed prior to its effective date, but only from and after any revision occurring on or after July 1, 2007.").

---

assumed in the general coverage of the policy within the meaning of MCL 500.2236(5).

. . . .

(c)   On and after the first day of the first month following the effective date of these rules, a discretionary clause issued or delivered to any person in this state in a policy, contract, rider . . . or similar contract document is void and of no effect. *This does not apply to contract documents in use before that date, but does apply to any such document revised in any respect on or after that date.*

Mich. Admin. Code R. 500.2202 (emphasis added).

[3]Standard's Group LTD Insurance policy has an effective date of November 1, 1996, was amended on June 1, 1999, and has not been amended since. White asserts that because Standard's *Group Life* Insurance policy was amended on December 1, 2007, R. 500.2202 applies to the *LTD* policy. But White did not argue below that the Group Life Insurance policy had been *amended* on December 1, 2007; rather, she argued that because R. 500.2202 took effect before Standard denied her claim, Standard could not assert its discretion under the policy.

In response to White's argument on appeal, Standard points to language in the December 2007 amendments stating that they are "[a]ttached and made a part of Group Policy 627108-C," which is the Group Life Insurance Policy. The Group LTD policy is numbered 627108-A. White's Reply Brief asserts that the Group LTD and Life Insurance policies are one and the same because all correspondence she received from Standard identifies her claim as being handled under "Group No 627108." *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (noting that "arguments made to us for the first time in a reply brief are waived.") In any event, as Standard asserts, the two policies bear different effective dates and amendments to each have been issued separately.

**B.**

Alternatively, White argues that Standard's denial of continued LTD benefits was arbitrary and capricious because she met the policy definition for continued LTD benefits. However, White does not explain how the district court erred and simply repeats arguments made below (which the district court's 60-page opinion fully addressed). In any event, we address the arguments briefly.

The Plan provides LTD benefits for a maximum of 24 months if the participant satisfies the "Own Occupation" definition of disability: "You are Disabled from your Own Occupation if, as a result of Physical Disease [or] Injury . . . you are unable to perform with reasonable continuity the Material Duties of your Own Occupation." The Plan defines "Own Occupation" as "any employment . . . or vocation that involves Material Duties of the same general character as your regular and ordinary employment with the Employer," and specifies that "[y]our Own Occupation is not limited to your job with your Employer."

Standard's vocational specialist reviewed SFI's job description and determined that White's Occupation matched the DOT classification for insurance customer service representative and compared the physical demands of White's Own Occupation with her functional capacity as reflected in her medical records. Standard relied on Dr. Papenfuse's assessment of functional capacity tests that measured the extent to which White's pain limited her functional capacity and agreed with his March 2008 recommendation (after SFI

terminated White's employment on February 8, 2008) that White could work in her Own Occupation with an ergonomic work station.

Standard's determination that White was able to perform sedentary work duties of her "Own Occupation" after February 11, 2008 is supported by the opinions of three of her own doctors, Drs. Papenfuse, Jones, and Lingenfelter, and results of functional-capacity testing reflected in her medical records. White's other treating physician, Dr. Beasecker, diagnosed White with sciatica and radiculopathy and projected that White could return to full-time work after six to eight weeks of part-time work. However, after SFI terminated White's employment, Dr. Beasecker opined that White was totally disabled, an opinion with which White's other doctors and Standard's consulting doctors did not agree.

The district court properly rejected White's arguments that the medical reviews Standard obtained were biased, limited in scope, and limited to a snapshot of time as of February 11, 2008. The record belies these arguments.

For these reasons, we AFFIRM the district court's grant of summary judgment to SFI on the ADA claims and the grant of judgment on the administrative record to Standard on the ERISA claim.

11